EDWARD WILLIAM SEWELL v. JOHN WILLCOX.

The prescription of one year established by art. 2474 of the Civil Code, relates only to actions for a supplement of price on the part of the seller, or for a diminution of price or the cancelling of the contract by the buyer, where there is room for an increase, or reduction of price, from excess or deficiency of measure. This prescription is an exception to that of five years, under art. 3507 of the same code, in relation to contracts in general. It runs against minors from the day of the sale, while that created by art. 3507 in relation to other contracts, commences only from their majority.

Where, by the terms of a sale, the vendor undertakes to procure a certificate from the Recorder of Mortgages showing that no incumbrances exist on the property, before the vendee is to be required to pay, the court will not order the price to be paid, even into court, before the production of such a certificate, though it should be proved that the incumbrances might be paid off out of the price. To do so, would be to alter the contract.

Defendant sold plaintiff property, the price to be paid as soon as certain mortgages thereon should be cancelled. The mortgages not being removed, the latter notified the former that unless they were cancelled, within a given time, he would sue to annul the contract, but made no offer (*offre labiale*) to pay the price. *Held*, that the vendee was not legally put in default—C. C. 1907 ; and that as no time was mentioned in the contract within which the mortgages were to be cancelled, the putting of the vendee in default, was an indispensable pre-reqnisite to the rescission of the contract on the ground of his failure to comply with his obligation to cancel them. Ib. 1906.

APPEAL from the District Court of the First District, *Buchanan*, J.

MORPHY, J. This action is brought by Edward W. Sewell, to cancel the sale of certain lots of ground, made to him by John Willcox. The petitioner alleges, that on the 19th of January, 1837, when this sale took place, there existed, on the property, numerous mortgages to an amount far exceeding the price agreed on, to wit, twenty-five thousand dollars ; and that the vendor bound himself, in the act of sale, to raise these incumbrances, within the shortest delay. That, in order to secure the performance of this obligation, it was agreed between the parties, that the notes given for the property should remain deposited in the hands of Raboteau, the Cashier of the Improvement Bank, until all the incumbrances on the property should be erased from the records

of the Recorder of Mortgages. The petitioner further represents, that more than eighteen months has elapsed since the execution of the sale, and that although frequent amicable demands have been made on said Willcox to comply with his agreement, he has hitherto neglected, and still neglects so to do. The petitioner further claims damages, alleging that he has been prevented from improving the property, or making any use of it, fearful of being evicted therefrom by some one of the mortgage creditors; &c. Willcox pleaded the general issue; but before the suit could be tried, he having failed, a supplemental petition was filed making his syndic a party defendant in the suit. The latter answered, averring that the plaintiff was in peaceable possession of the property, and had enjoyed the rents and profits thereof from the day of sale up to the present time, which rents and profits amount to $3000 per annum; that he is in no danger of eviction from any of the mortgages mentioned in the act of sale, which have been paid and satisfied to a large amount, and are nugatory and of no validity; and that, as syndic of the creditors of John Willcox, he has the power to raise and annul the mortgages, and has offered, and still offers to do it, on the payment of the purchase money into court, or into the Improvement Bank. The syndic further answered, that it cannot be legally ascertained by any judgment between the plaintiff and himself, whether there is any thing due to the persons who appear to have mortgages on the property; and that no further proceedings should be had in the suit until such persons are made parties to it. He finally averred, that he had brought suit against Sewell, and all the mortgage creditors of Willcox, for the purpose of raising the mortgages and causing the price to be paid; and he prayed, that the present action might be consolidated therewith for adjudication between all the parties concerned. To the suit brought by the syndic against Sewell on his notes, and against Josiah Barker and the other mortgagees to compel them to raise their mortgages, Sewell excepted, on the ground that there already existed in the same court a *litispendance* between himself, and the syndic, on the matters and things set forth by the latter as the basis of said suit. This exception was overruled, and the two causes ordered to be consolidated. Of the

several mortgage creditors thus made parties to this controversy, Josiah Barton alone answered, denying the right of Willcox, or his syndic, to intermeddle with his mortgage, which he alleges he holds under a former vendor of the property, and on which he states that he has taken out an order of seizure and sale, against the plaintiff, as third possessor. Under these pleadings and the evidence adduced below, the Judge rendered a decree annulling and setting aside the sale, and allowing the syndic a sum of nine hundred and fifty-eight dollars and thirty-three cents, with the privilege of a lessor. The syndic has appealed.

This case was before us on a former occasion, and was about to be tried, when the appellant interposed in this court the plea of prescription. It was then, at the instance of the appellee, remanded pursuant to article 902 of the Code of Practice. The decision of the Judge, overruling this plea, has been added to the record, and presents the first question to be disposed of. The prescription relied on, is based on article 2474 of the Civil Code. We think that it is clearly inapplicable to the present case. It refers to article 2472, to be found in the same section, which treats of the tradition, or delivery, of the thing sold. This last article allows the buyer the option of giving a supplement of price, or of receding from the contract, when, in consequence of a surplus of measure, there is room for an increase of the price. The prescription of one year, created for this particular case, forms an exception to that of five years established by article 3507 for the rescission of contracts in general. It runs against minors from the day of the sale ; while that created by article 3507, in relation to all other contracts, commences against them only from the time of their majority. This short and absolute prescription was found conducive to the security and alienation of immoveable property. Troplong, n. 348. Duranton, vol. 16, n. 237.

It is clear, that this case must be tried between the syndic, and the plaintiff, as if Willcox had not failed, and was the only defendant in the suit. The Judge, we think, erred in overruling the plaintiff's exception, and in consolidating the two causes, thus encumbering the present action with parties and issues not properly belonging to it. Of this, the Judge below became sensible afterwards ; for, in his final judgment he pronounces only on the issue

as joined between the plaintiff and Willcox before his failure·
The appellee's counsel have endeavored to show, that the mort-
gages set forth in the certificate annexed to the sale, although ap-
parently exceeding sixty thousand dollars, exist in point of fact
only to an amount which could be paid out of the purchase mo-
ney, if it was brought into court, as prayed for by the syndic.
This may be true, but, by the terms of the sale, a clear certifi-
cate must be produced *before* Sewell can be bound to pay. To
require him first to pay, in order that the money may be used to
satisfy the mortgages, would be to make for him a contract differ-
ent from that he assented to. Well might he answer "*non in hæc
fœdera veni.*" The syndic cannot possess more rights than the in-
solvent, whose assignee he is. Willcox could surely have set up
no such pretension.

It has been urged, that this action was premature, because not-
withstanding the expression, "*the shortest delay,*" used in the
sale, it was well understood that the erasure of the mortgages
might possibly be delayed beyond the periods of the maturity of
the four notes of the plaintiff at six, twelve, eighteen, and twenty-
four months; that with a view to this contingency, it was stipu-
lated that the notes deposited should draw interest, at eight per
cent. per annum from their respective maturities, so long as the
mortgages remained uncancelled, and ten per cent. per annum for
any delay after the plaintiff should have become absolutely bound
to pay the price, in consequence of the erasure of the mortgages.
We have attentively examined the whole context of the act of
sale, in connection with the wording of the notes described in it.
The meaning of the several clauses touching the interest to be
paid by the plaintiff, is far from being explicit and free from doubt;
but whether they authorize the construction put upon them, and
the inference deduced from them by the appellant's counsel, it is
unnecessary for us to say, as he has urged another ground upon
which this case must be decided, to wit : that Willcox had never
been legally put in default previous to the institution of the pre-
sent action. The testimony shows, that the plaintiff's counsel
wrote a letter to Willcox, demanding of him the raising and can-
celling of the mortgages existing on the property, and notifying
him that suit would be brought against him for the annulling of

the contract of sale, in the event of his refusal or neglect to cancel said mortgages. It does not very clearly appear whether this letter was received by Willcox; but, admitting that it reached him, it contained no offer on the part of Sewell to perform his part of the contract, which was to pay the purchase money then due. In commutative contracts, where the reciprocal obligations are to be performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must offer, or perform as the contract requires, that which, on his part, was to be performed, or the opposite party will not be legally put in default. Civil Code, art. 1907. In *Stewart* v. *Paulding*, 6 La. 151, we said, that " the rules relating to the steps required to be taken in order to place a debtor *in mora*, considered in regard to some of these provisions, are entirely arbitrary, but being imperative must be obeyed by those who administer justice under the law." As, in the present case, no time was even mentioned within which the mortgages were to be cancelled, the putting in default of the vendor, Willcox, was an indispensible pre-requisite to the rescission of the contract, on the ground of his failure to comply with his obligation to cancel them. Civil Code, art. 1906. 6 Mart. N. S. 229. 3 La. 382. 6 Ib. 151.

It is therefore ordered, that the judgment of the District Court be avoided and reversed, and that ours be for the defendant in both suits, as in case of nonsuit, with costs respectively; those of this appeal to be borne by the appellee.

*Benjamin* and *Grymes*, for the plaintiff.

*M'Henry* and *A. Hennen*, for the appellant.