No. 10,213.

MARY J. ASHBEY, TUTRIX, VS. JOSEPH H. ASHBEY ET AL.

The rights which children have against their surviving father or mother, for their shares of community property, adjudicated to the surviving spouse, and which he held in usufruct, must not be confounded with the rights accruing to them by reason of the tutorship.

The action for account of the usufruct is barred by the prescription of ten years only, to be computed from the termination of the usufruct. Cochran vs. Violet, 38 Ann. 525.

Courts cannot supply the plea of prescription, which must be pleaded specially and distinctly.

An averment by the pleader that, in the same matter between the same parties, but in a different suit and in another court, he had pleaded prescription, is not sufficient as a plea in the latter case.

The character of an action must be determined from the nature of the relief prayed for. A prayer for the nullity of a mortgage, in so far as relates to the complaining creditor's rights, characterizes the suit as a revocatory action.

The lapse of time within which a revocatory action must be brought, is not a term of prescription strictly speaking; it is a forfeiture of action by delay; and not affected by the rule of law which provides that prescription does not run against minors. Hence the rule of Article 1987, Civil Code, fixing the delay of one year as a forfeiture of the right of action therein conferred, must apply to minors as well as to persons of age.

It is, therefore, a proper plea for a defendant in a revocatory action brought by a tutor for his ward, as judgment creditor of the common debtor.

The plea cannot be affected by an action as operating a suspension of the delay prescribed by

Ashbey vs. Ashbey et al.

law, if it appears that such action was dismissed for the reason that the party who had brought it had no interest in the matter, and was not a creditor of the debtor, whose act was assailed as being a fraudulent preference of one creditor over another.

An action judicially declared to be a nullity can produce no legal effect.

APPEAL from the Civil District Court for the Parish of Orleans.
Monroe, J.

### J. S. & J. T. Whitaker for Plaintiff and Appellee:

1. By the Code of 1870 prescription does not run against minors unless specially mentioned. The Code of 1870 and all the rules upon the subject require that full effect shall be given to the exceptional and subsequent provisions of Articles 3522 and 3554, taken in connection with Article 3541, in so far as they might be considered effected by the anterior and general provisions of Article 1987.

2. When plaintiff alleges a fraudulent transfer of property to his prejudice this is sufficient to maintain a suit to annul a transfer. 28 Ann. 938.

3. A mortgage made by an insolvent to his children, to the prejudice of a creditor having a just claim, for the purpose of screening all his property from pursuit under pretense of securing rights long prescribed and under false statements, in said act of mortgage, of the existence of a judgment by a competent court in their favor, may be annulled and set aside.

4. The effect of a judicial mortgage in favor of a person of full age ceases even against the contracting parties if the inscriptions have not been renewed before the expiration of ten years in the manner in which they were first made. C. C. 3369.

5. The action of the minor against his tutor, respecting the acts of the tutor, is prescribed by four years, to begin from the day of his majority. C. C. 362; 38 Ann. 529. A second marriage puts an end to the usufruct of property. 38 Ann. 529.

6. The adjudication to minors and the mortgage resulting from it does not settle or liquidate the question of liability of tutor to his children, it being competent for him to show in making settlement that he had paid the debts of the community and that there was nothing due to the minors. 2 Ann. 282; 12 Ann. 78; 34 Ann. 510.

7. In a suit brought by majors against their father as tutor, it is competent for him to plead prescription of four years, and an intervenor in said suit may interpose said plea if he fail to do so. 8 Ann. 504; 37 Ann. 809.

8. Seizures and notice interrupt prescription as in cases of executory process. 33 Ann. 305; Article 2244 Code Napoleon; Marcade, p. 134, vol. 3.

9. A suit unsuccessful on final decree followed by another between the same parties, or substantially the same, and for the same cause of action, interrupts the prescription of one year if the first was brought immediately after final judgment in the first suit. 37 Ann. 722 and 34 Ann. 413.

### A. J. Lewis for Defendants and Appellees:

The limit of one year to the revocatory action, provided by Article 1987 (1982), R. C. C., runs against minors. 24 Ann. 211; 5 R. 85; 39 Ann. 29.

No suspension thereof is produced by a suit brought by a third person, said by this Court in 39 Ann. 235, to be the only plaintiff and to have had no interest therein. 28 Ann. 412.

The adjudication to the survivor of the community of the shares therein inherited by the minor children, is a sale and not a money judgment. 21 Ann. 643; 25 Ann. 349; 5 Ann. 598.

Such adjudication cannot be attacked collatterally. 2 Ann. 394; 23 Ann. 17.

By it the common becomes the father's separate property, and he owes the minors the price, 5 Ann. 598. whereof he has the usefruct, which is prescribed by ten years from its termination. 37 Ann. 224; 5 Ann. 121; 13 Ann. 350.

Prescription must be formally plead, and the burden of proof is on him who pleads it.

When the minor's rights were thur fixed and liquidated by such proceedings regularly had in the Probate Court, in 1857, and formally set forth in a notarial act and in a judgment of court, both recorded promptly at that date in the mortgage office, the inscription again made as required by the Constitution of 1868, and Act No. 95 of 1869, preserved the legal mortgage of the minors, who were still such and under the tutelage of their father.   25 Ann. 611 ; 34 Ann. 1041 ; 35 Ann. 943; 39 Ann. 222.

The minor's claims being thus liquidated, no account is necessary where they make no additional claim.   23 Ann. 361 ; 24 Ann. 190 ; 12 M. 106 ; and the prescriptions of four and ten years, if plead, do not apply.

The prayer of the petition characterizes the action.   5 R. 132 ; 20 Ann. 170.

A mortgage granted to his children by the father, recognizing and securing their claims against him resulting from such adjudication, rests on a sacred, lawful cause. as well as a natural obligation.   To be attacked, it must be alleged and shown that the entire judicial proceedings were simulated and intended to defraud creditors.   Where plaintiff's petition and evidence all show the reality of the minors' rights and their liquidation in 1857, at a time not suspicious and when their father was in prosperous circumstances, plaintiff cannot attack the subsequent recognition by the father of such debt as a fraud.   4 L. 256 ; 10 L. 363 ; 4 R. 408 ; 12 R. 141 ; 26 Ann. 467 ; 12 Ann. 429 ; R. C. C. 4759 (1752), 1900 (1894).

Plaintiff's judgment may be reduced by way of defense, as well as by direct attack, where a payment of $1500 has been denied but subsequently admitted in another suit.   40 Ann. 288 ; 32 Ann. 1248 ; C. C. 21 65 (2162) ; 2 Ann. 817 ; 15 Ann. 174, 526 ; 16 Ann. 294 ; 20 Ann. 569 ; 25 Ann. 315.

*Armand Pilié,* Curator *ad hoc,* for absent Defendant:

1.  When the action is barred by prescription, a natural obligation still subsists, and is a sufficient consideration for a new contract.   Rev. C. C., Articles 1758 and 1759.

2.  Although not so expressly provided for by law, annual prescription runs against minors, not only when found conducive to the preservation and alienation of immovable property, 5 Rob. 85, Troplong, de la Prescription, No. 1038, Duranton, vol. 16, No. 237, but also when resulting from a legislative enactment, which, if not in direct terms, yet virtually, derogates from the general rule of Articles 3522 and 3554 of the Rev. C. Code, and thus forms an exception thereto.   Rev. C. C., Article 13 ; 24 Ann. 211 ; Aubry & Rau, vol. 2, p. 335 and note 5.

3.  The term of one year mentioned in Article 1987 of the Rev. C. C., is, strictly speaking, less a species of prescription, though commonly so called, than a delay of forfeiture, *un délai de déchéance,* whereby an action is forfeited by the mere fact of its not having been brought within the period prescribed by law ; and this, without, as is the case with the creditor in the matter of prescription, any presumed negligence, or idea of renunciation, on the part of him to whom the action belonged : *dies actionis exit vel abit.*   Aubry & Rau, vol. 8, p, 426, No. 4.

There is also this further difference between prescription and delays of forfeiture, that the latter run against all persons without exception : majors, minors and interdicts.   Aubry & Rau, *ubi suprà,* Duranton, vol. 21, No. 290 ; Troplong, de la Prescription, vol. 1, No. 27 and vol. 2, No. 1038 ; De Fréminville. de la Minorité, vol. 1, 354 ; Vazeille, vol. 1, 258 and vol. 2, 268.

4.  From a suit brought by one without any real or actual interest which he pursues, and which, therefore, is nothing more than the semblance of a suit — a mere delusion — no legal consequences, such, for instance, as the interruption of prescription, can be made to flow.   C. P. Article 15 ; Leberman & Co. vs. New Orleans and Havana Steamship Company, 28 Ann. 412 ; Knoop et al. vs. Blaffer et al., 39 Ann. 29.

The civil interruption of prescription, or of a delay of forfeiture, and which interruption pro-

ceeds from executory process. or a citation. is strictly limited to the parties between whom the act of interruption has taken place, to the absolute exclusion of all other persons, except in matters of solidarity, indivisibility, and suretyship: *à personâ ad personam non fit interruptio, passivè nec activè.* Marcadé, de la Prescription. pp. 124 and 147: Laurent. Cours de droit élémentaire, vol. 4, 639.

The opinion of the Court was delivered by

Poché, J.    This is a revocatory action brought by the tutrix of a judgment creditor of the defendant, Joseph Ashbey.    Its object is to annul a conventional mortgage executed by said Ashbey in favor of his son, Louis Ashbey, and of his daughter, Martha B. Ashbey, wife of William P. Healey, and intended to secure them in an indebtedness of $5606 19, due to them by their father as the usufructuary of their shares of the property hitherto belonging to the legal community existing between their said father and their deceased mother.

The main ground of attack is that the assailed mortgage was fraudulently intended to defeat plaintiff tutrix from recovering the amount due to her minor child in her judgment against Joseph Ashbey, who owed nothing to the mortgagees, and who was at the date of the mortgage, helplessly insolvent, to his own, and to the knowledge of the other contracting parties.

The prayer of the petition is for the nullity of the mortgage, in so far as it relates to the rights of the complaining creditor, and to subject the property to the ranking judicial mortgage of the minor, who is the real and only plaintiff in the suit.

The defense is a general denial and the plea of prescription of one year, under the provisions of Article 1987 of the Civil Code, which reads as follows :

"No contract made between the debtor and one of his creditors for the purpose of securing a just debt, shall be set aside under this section, although the debtor were insolvent to the knowledge of the creditor with whom he contracted, and although the other creditors are injured thereby, if such contract were made more than one year before bringing the suit to avoid it, and if it contain no other cause of nullity than the preference given to one creditor over another."

The assailed mortgage was executed on the 20th of May, 1885, and the present action was brought on the 29th of March, 1887.

The judgment of the District Court was in favor of plaintiff, and defendants appeal.    Under our understanding of the pleadings, the issues presented in the case involve the discussion of the three following questions :

1.    Did Joseph H. Ashbey owe a *just debt* to his two children, Louis

and Martha Ashbey, in May, 1885, when he granted them the mortgage assailed, and was such mortgage merely a preference of one creditor over another?

2. Are the provisions of Article 1987 of the Civil Code, which limit the revocatory action within one year, applicable to minors?

3. If so, has the plaintiff done any act which suspends the operation of the law as to his present action?

I.

The pertinent facts bearing on the point of discussion are substantially as follows:

The succession of Martha B. Ashbey, wife of Joseph H. Ashbey, and the mother of the other two defendants, was opened in the proper court in May, 1857, at which time both of said defendants were minors.

On the petition of Joseph H. Ashbey, as surviving partner in community, in which he urged his claim to hold in usufruct the shares of the community accruing to the minor children, issue of the marriage, and in which he prayed that their interest aforesaid be adjudicated to him at the price of inventory thereof, a family meeting was convened and held in behalf of said minors to deliberate on the subject matter.

On the recommendation of the family meeting, whose proceedings were duly homologated, judgment was rendered in favor of the prayer of the petitioner.

The judgment, not only operated the adjudication as prayed for, but it liquidated the interests of the minors, which were fixed at $5605 18, and "remitted" the matter to a designated notary public in order to complete the adjudication.

The judgment was signed on January 23, 1858, and the notarial act, which it contemplated, and in which the minors were represented by their under-tutor, was executed on the 23d of September of the same year; it was registered in the proper office on the 29th of the same month.

It then appears that, on the 21st of April, 1885, Louis Ashbey and Martha B. Ashbey Healey, who had become of age and who had left the State, brought suit, in the United States Circuit Court, against their father, for judgment in the sum of $5605 18, annexing to their petition a copy of the notarial act just referred to, and which, in legal effect, was but a repetition of the judgment of January 23, 1858, by which their claims against their father had been determined and fixed. In that suit Mary J. Ashbey intervened in her own right and as the natural tutrix of her children, for the purpose of resisting plaintiffs' claim, to which she interposed numerous objections, all resting on a claim, which she was

then pressing in a State Court, against Joseph H. Ashbey, the common debtor, including among her pleas that of the prescription of four and ten years in bar of plaintiffs' right of recovery. A judgment by default was rendered against the defendant, but the case proceeded no further, and it is yet undecided, the default having never been confirmed.

It was at this juncture that the act of mortgage between Joseph H. Ashbey and his two children was executed on the 20th of May, 1885.

The judgment in the State Court, in favor of Mary J. Ashbey, Tutrix, vs. Joseph H. Ashbey, rendered on May 11, 1885, and which was held in suspense by a motion for a new trial, was not signed before the 29th of that month.

Hence plaintiff realized the necessity of removing the mortgage of May 20th as an obstacle in the way of her minor son's judgment, and to that end is her present action.

In her petition herein she recites some of the facts and incidents hereinabove stated, including the allegations contained in her petition of intervention in the Federal Court, and she attacks the mortgage of May 20th as a fraud against her minor son, and as a fraudulent device to defeat her son's rights under his judgments, and she concludes with a prayer for a decree setting aside said mortgage, and deciding it to be, "so far as relates to petitioner, tutrix, etc., fraudulent, null and void, revoking said mortgage and setting it aside and declaring all the property mentioned in said act of mortgage, etc., to be subject to the judgment of petitioner aforesaid, etc., etc." We conclude from the prayer, as just quoted, that the suit is simply the revocatory action as defined in our code.

Hence it follows, as already stated, that the first point of investigation is to ascertain what was the real status of the indebtedness, if any, of Joseph H. Ashbey to the mortgagees at the date of the mortgage.

For the purposes of this case, under the restricted issues to be discussed, it is unnecessary to determine whether the mortgage resulting from the judgment of adjudication of January 23, 1858, had been preserved by inscription and timely re-inscription. No claim is pressed under that mortgage. The vital question is whether the indebtedness resulting from the judgment was, or not, alive at the date of the mortgage herein assailed.

The fundamental error of the judgment appealed from, the reasons of which are made part of their brief by plaintiffs' counsel, consists in considering, as an issue in the case, the plea of prescription of four years, as a bar to any claim in favor of Louis and Martha Ashbey against their father, growing out of the tutorship.

In this case plaintiff has entirely failed to set up *any plea of prescription at all.* The only allusion to prescription, in her petitition, is contained in the recital of her pleadings as intervenor in the case in the Federal Court. *There* the plea was made, as hereinabove stated, and *there* alone it is entitled to consideration and discussion. Courts cannot supply the plea of prescription, C. C. 3463, and a statement in pleadings that a plea of prescription was interposed in another suit, in a different court, although between the same parties, and affecting the same rights, cannot be construed as a sufficient plea in the action under consideration.

The next error of the judgment, which flows as a corollary from the principal or main fallacy, lies in the contention that the indebtedness which Ashbey was intending to secure by the assailed mortgage grew out of his tutorship of his co-defendants. From the mortuary proceedings had in the settlement of his wife's succession, which are not assailed, which could not be assailed collaterally, and which took place at a time not suspicious, it clearly appears that the indebtedness of the father to his children grew out of the usufruct of their shares of the community property, and not out of the tutorship. It appears from the inventory that the deceased wife and mother owned at least one piece of separate and movable property, which the survivor kept, and that the estimated value of that property did not figure in the proceedings which liquidated the minors' interests in the community.

His accountability for that property would result from the tutorship, but as regards the one-half of the community property, his liability grows out of his usufruct, and it has been fixed by the judgment of January 23, 1858, as a debt due for the purchase price of the minors' shares of said property, which he withheld under the law. And for such an account the prescription of ten years only could have prevailed. Cochran vs. Violet, 38 Ann. 525.

But that prescription is not pleaded in the case, and hence it cannot be considered as an issue under the pleadings. And it is very doubtful whether it could have availed plaintiff even if it been specially and distinctly pleaded as part of the revocatory action, because this is not a case in which the children are seeking to enforce liability for an account of usufruct against their father, either adversely to him, or over objections by intervention of his creditors.

The rights of these defendants have been determined by a solemn judgment; their right to an account of usufruct has been repeatedly and continuously admitted and recognized by the usufructuary debtor, whose mode of accounting was by means of the Act of May 20th, 1885.

Should it even be conceded that on the face of the papers the claim of defendants was prescribed, there was no legal impediment to the father's treating the indebtedness as a natural obligation, which is recognized in law as a sufficient consideration for a new contract. C. C., Art. 1758, § 3, Art. 1759, § 2; Succession of Edmond Dejean, 8 Ann. 505.

The new contract was entered into on the 20th of May, 1885; it is now an accomplished fact; the mortgage which it created is anterior in date to the judicial mortgage held by appellee. Prescription cannot be attributed a retroactive effect, so as to destroy rights which were duly revived, even if apparently extinct, and hence the plea, if made, could not have been considered. In these proceedings those rights are resisted as having no existence, and the act which was intended to secure them is attacked as fraudulent.

For want of countervailing proof, the action fails in so far as their existence is concerned. Hence flows the conclusion that the claim covered by the mortgage was *a just debt* within the meaning of the Code.

But the record shows that the debtor was insolvent at the time, as well to the knowledge of the mortgagees as to his own, that the mortgage was intended to give a preference to his children over the complaining creditor, and that the latter will be injured thereby if it is sustained.

Hence the act was open to his attack, as conferring an undue preference, and his action must be maintained unless it is barred by the lapse of one year as provided in Article 1987 of the Code.

## II.

And that brings us to the second point of discussion in the case.

Appellee's contention, which was adopted by the District Judge, is that the delay of one year prescribed by Article 1987 of our Code, on the subject of revocatory action, does not apply to minors, against whom prescription does not run, under the textual provisions of the Code. Articles 3522, 3554.

That proposition naturally suggests the inquiry whether the delay prescribed by the Article is technically a term of prescription as contemplated in civil law.

According to that system, "prescription is a manner of acquiring the ownership of property, or discharging debts, by the effect of time, and under the conditions regulated by law." Civil Code, Article 3457. Code Napoleon, Article 2219.

The essence of prescription is that the party who invokes it as a remedy, thereby acquires the ownership of property or is thereby discharged from a debt or obligation.

Now in the contract herein assailed by the revocatory action, the defendants can acquire no property or be discharged from no debt or obligation by and through the lapse of one year which they plead in bar of plaintiff's action.

The rights of mortgage which they claim were acquired by the Act of May 20th, 1885, and the indebtedness to be secured thereby, accrued to them by right of inheritance from their mother, and was liquidated by the judgment of January 23d, 1858.

The defendant, Joseph H. Ashbey, cannot be benefitted by the plea; his liability to plaintiff, the minor, is fixed by the judgment of May 29th, 1885, and his indebtedness to the others is determined by the act of mortgage of May 20th, 1885. Under any event his property, the common pledge of his creditors, will be forfeited to him.

The only advantage which his co-defendants can derive from the plea, is the defeat of plaintiff's right, under the law, to inquire into their mortgage rights, and avoid their legal effect. The grant of that right to a creditor, known as the revocatory action, is coupled with a condition, and that is the limit of time within which it must be exercised.

It would, therefore, seem that the lapse of time thus prescribed by the law is more in the nature of a term of forfeiture than a term of prescription. Nothing is acquired by the lapse of time, but a right is destroyed by inaction during the prescribed time.

That idea must have prevailed in the minds of the compilers of the Code, and of the legislators who adopted it, for it appears that the rule of law under discussion is not to be found in the Code under the title of " Prescription," not even in the paragraph of the section which treats of the prescription of one year; but it is to be found under the title of " Conventional obligations," and in the section entitled: " What contracts shall be avoided by persons not parties to them."

But, should it be conceded that the term or limit of time prescribed by the article can be construed as meaning technically prescription, it appears to have been the clear intention of the framers of the Code not to have excepted minors from the effect of the shortest term of prescription as established in our law.

Article 3541 reads: " The prescription mentioned in the preceding article, and those described above in paragraphs I and II, run against minors, and interdicted persons, reserving, however, to them, their recourse against their tutors or curators." The paragraphs referred to are those which treat of the prescriptions of " one year " and of " three years." Hence it is that this court, in commenting on the prescription of one year as a bar to the action for the supplement of the price on the

Ashbey vs. Ashbey et al.

part of the seller, and that for diminution of the price, etc., on the part of the buyer, under the provisions of Atricle 2474 (now Article 2498) of the Code, used the following language: "It runs against minors from the day of the sale. * * * This short and absolute prescription was found conductive to the security and alienation of immovable property." Sewell vs. Willcox, 5 Rob. 85.

These considerations apply with great force to the revocatory action, and are strongly suggestive of the wisdom of restricting that right of action within a short space of time, and of making the restriction applicable to all persons, without the slightest discrimination in favor of minors.

It is of the very essence of the reason which requires a short term for action that it should apply alike to minors, for otherwise the object of the law could frequently be defeated. It is easy to conceive that the minor, who is the real plaintiff in this case, might be only two years of age, and hence the matters at issue herein could be held in suspense for nineteen years, during which time confusion would characterize all questions connected with the mortgage rights of the defendants in this case. Such a construction would surely not be "conductive to the security and alienation of immovable property," and would defeat the precise object contemplated by the law-maker when he restricted the right of action within the short space of one year.

No doubt can be entertained of the wide distinction which exists in our system of laws, between the rules which regulate the mode of acquiring rights by the lapse of time, which is, strictly speaking, prescription, and the principles which govern the mode of circumscribing certain judicial actions or proceedings within a prescribed limit or space of time.

The question came up before this Court in the case of Beaird vs. Russ, 34 Ann. 315, in which one of the parties contended that the modes of interrupting prescription defined in the Code under that title, could be applied to the delay for appeals as fixed by law. After referring to the definitions of "prescriptions" and of "appeals," the Court said :

"As will be readily seen, one is a rule of action prescribing one of the modes of acquiring property, or of discharging debts, the other is a rule of judicial procedure looking to the correction of an alleged judicial error. The only element in common between prescription and appeal is that of *time*; in the former it is the essential element, in the latter it is only incidental, and intended only to regulate or limit the exercise of the act."

It is too plain for argument that the same difference exists, and that

the same distinction must be observed, between the rules which govern prescription, strictly speaking, and those which prescribe, the lapse of time which limits the exercise of the right of the revocatory action.

The same distinction is recognized in French jurisprudence, as shown by the writings of learned commentators on that system whence ours has derived.

Thus, in the "Droit Civil Français," by Messrs. Aubry and Rau, vol. 8, p. 426, we find the following language which bears directly on our present discussion :

"La prescription proprement dite se distingue facilement, et par sa nature même, des déchéances résultant de l'expiration des délais accordés par la loi, par la convention, ou par le juge, soit, pour l'exercice d'une option ou d'une faculté quelconque, soit pour le paiement d'une obligation ou l'exécution d'une condamnation. Il ne faut pas, non plus, confondre la prescription proprement dite avec les déchéances qu'entraine l'écoulement d'un délai préfix auquel la loi, en accordant une action, en a limité l'exercice." *  *  *

"A la différence de la prescription, qui est suspendue en faveur des mineurs et des interdits, les délais emportant déchéance courent contre eux, aussi bien que contre les majeurs jouissant de leurs droits."

"C'est à ce point de vue surtout qu'il importe de distinguer les déchéances de la prescription extinctive." (Note 16, p. 427).

We, therefore, feel fully warranted to conclude and to hold that the lapse of time prescribed by the article, within which to institute the revocatory action, is not suspended as to minors, and that the rule fixing the delay was properly invoked by the defendants in this case. Hence the present action came too late, unless appellee's contention, that her previous action in this matter operates a suspension of the rule, is correct.

### III.

That contention involves the third question in this case, as hereinabove indicated. In that connection the following facts are of record: On the 24th of August, 1885, a suit was brought by Mrs. Mary J. Ashbey, who therein obtained a judgment in the lower court annulling the mortgage herein assailed as a fraudulent preference in favor of the defendants, Martha B. and Lewis Ashbey. On appeal to this court the judgment thus rendered was reversed on the distinct and exclusive ground that Mrs. Ashbey had no interests in the premises, not being the owner of the judgment of May 29, 1885, rendered in favor of her children. Ashbey vs. Ashbey, 39 Ann. 105.

This is the action which is now held up as a legal interruption of the delay fixed by law for the revocatory action.

But the very reason for which her action was dismissed, to-wit, her absolute failure to show a real and actual interest which she was then pursuing, is a sufficient answer to her present contention as tutrix, representing her minor child, in whom was centered the right of action which did not exist in her personally.

The action was decreed to be a nullity, and it is clear that a nullity or nothing can produce no legal effect.

In the case of Bertrand vs. Knox, 38 Ann. 350, it was held that a defendant sued as a single woman and thus cited could not be brought into court by the service on her of an amended petition alleging that she was a married woman.

A citation served on her in a different capacity, and as such illegal, could not be completed by the mere service of an amended petition alleging her correct status or real capacity. Liberman vs. Company, 28 Ann. 412.

In the case of Knoop et al. vs. Blaffer et al., 39 Ann. 29, it was held that suit against the same defendants as directors of a defunct bank, by parties who were dismissed for want of personal interest, did not interrupt prescription. The Court said: "The plaintiffs in that case were without a cause of action. * * * Prescription is *stricti juris* and cannot be eked out from one cause to another by analogy; neither can the legal interruption of prescription."

The same rule applies here; no legal effect can flow from a proceeding decreed to be null for want of real or actual interest in the plaintiff therein. The delay of forfeiture was not interrupted by that suit. Ashby vs. Ashby, 39 Ann. 105.

Hence the present action is defeated by the plea herein interposed by the defendants.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is now ordered that plaintiff's demand, as tutrix of the minor, William H. Ashbey, be rejected; and that her action be dismissed with costs in both courts.

Rehearing refused.