377 So.2d 1195 (1979)
Janey Lynn POUNDS
v.
Richard Miles SCHORI.
No. 64695.
Supreme Court of Louisiana.
November 12, 1979.
Rehearing Denied January 11, 1980.
*1196 Dennis R. Whalen, Baton Rouge, for defendant-applicant.
Frank P. Simoneaux, Breazeale, Sachse & Wilson, Baton Rouge, for plaintiff-respondent.
PAUL B. LANDRY, Jr., Justice Ad Hoc.
On application of defendant, Richard Miles Schori, we granted certiorari to review his complaint that the Court of Appeal, First Circuit, erroneously sustained judgment of the trial court dismissing applicant's suit to disavow paternity of the child Kristina Schori Pounds, born to plaintiff on July 22, 1976, during the existence of a legal marriage between these parties. Both lower courts held that the delay provided for institution of a disavowal action, is peremptive rather than prescriptive and that an action questioning paternity *1197 brought by Applicant in Oklahoma, during the peremptive period, did not interrupt running of the delay for bringing such a suit. We agree and affirm dismissal of defendant's action brought in this state after the delay period expired.
There is no factual dispute. On October 17, 1974, plaintiff obtained judgment of separation from bed and board from defendant to whom she was married on June 10, 1967. In December, 1975, defendant filed for final divorce on the ground that one year and 60 days elapsed from the date of plaintiff's separation decree. Plaintiff opposed the divorce action by pleading two brief periods of cohabitation between the parties in late December, 1975, and early February, 1976. No further proceedings were had in the divorce action. On July 22, 1976, plaintiff gave premature birth to the child Kristina, at which time both parties were residents of East Baton Rouge Parish, their matrimonial domicile. The child was born in East Baton Rouge Parish, in which parish defendant was present at the time of birth and of which birth defendant had knowledge. Approximately 12 days after the birth, defendant left East Baton Rouge Parish and moved to Oklahoma. In October, 1976, defendant filed suit in Oklahoma seeking a separation of maintenance and a determination of paternity of the child Kristina. In February, 1977, defendant amended his Oklahoma petition to request a final divorce, which was eventually granted on May 31, 1977. Defendant's disavowal action was dismissed by the Oklahoma court on defendant's (plaintiff herein) exception of lack of personal jurisdiction over defendant and the child. Meanwhile, prior to granting the Oklahoma divorce, plaintiff obtained judgment of separation in the Family Court, East Baton Rouge Parish. Plaintiff's Family Court judgment also awarded her child support in the sum of $300.00 monthly and $2,800.00 in past expenses. On June 22, 1976, almost one year after Kristina's birth, defendant filed a disavowal action in the Family Court, East Baton Rouge Parish.
The sole issue before us is the timeliness of the disavowal action brought by defendant in East Baton Rouge Parish. The following codal provisions, in effect at the time of the birth in question, are pertinent:
"La.C.C. Article 184:
The law considers the husband of the mother as the father of all children conceived during the marriage."
"La.C.C. Article 188:
The legitimacy of the child born three hundred days after the separation from bed and board has been decreed, may be contested, unless it be proved that there had been cohabitation between the husband and wife since such decree, because it is always presumed that the parties have obeyed the sentence of separation.
But in case of voluntary separation, cohabitation is always presumed, unless the contrary be proved."
"La.C.C. Article 189:
The presumption of paternity as an incident to the marriage is also at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible."
"La.C.C. Article 191:
In all the cases above enumerated, where the presumption of paternity ceases, the husband of the mother, if he intends to dispute the legitimacy of the child, must do it within six months from the birth of the child, if he be in the parish where the child is born, or within six months after his return, if he be absent at the time, or within six months after the discovery of the fraud, if the birth of the child was concealed from him; or he shall be barred from making any objection to the legitimacy of such child."
We are aware that Act 430 of 1976, has made significant amendments to the foregoing codal articles. We note also that the operative facts in the matter before us, all transpired before the effective date of Act 430 of 1976, therefore these amendments are inapplicable herein unless they can be given retroactive effect.
*1198 It is well settled that remedial statutes may be given retrospective application. McCoy v. Hunter, 167 La. 1032, 120 So. 767 (La.1929).
Legislation which affects substantive rights may not be accorded retrospective application unless it contains language expressly indicative of legislative intent to make it retroactive, and then only when constitutional guarantees such as due process, vested rights and the inviolability of contracts will not be adversely affected thereby. Haas v. Haas, 182 La. 337, 162 So. 5 (La.1935); State ex. rel. Tulane Homestead Association v. Montgomery, 185 La. 777, 171 So. 28 (La.1936); Long v. Northeast Soil Conservation District of La., 226 La. 824, 77 So. 408 (La.1954).
Act 430 of 1976, affects substantive rights inasmuch as it affects the laws governing disavowal of persons born during legal marriage. The status of an individual born during marriage and entitled to the presumption of legitimacy, is a matter of substance of the utmost import considering it involves not only legitimacy but the right of inheritance. Not only does Act 430 of 1976, affect substantive rights, it is totally devoid of language indicative of legislative intent to make it retroactive. It follows that Act 430 of 1976, is without application herein. Consequently, we decide the case at bar solely on the law and jurisprudence in effect prior to the effective date of Act 430 of 1976.
We note, purely in passing, that Act 430 of 1976, retains the presumption of legitimacy formerly contained in Article 184. See La.C.C. Article 184, as amended by Act 430 of 1976. It is also noted that present La.C.C. articles governing actions of disavowal appear to make significant changes in the former codal provisions, particularly present Articles 186 and 187, but we express no opinion as to these changes in determining the instant matter.
The decisive issue herein is whether the time limit of six months provided in Article 191, above, is prescriptive or peremptive, and, if it is peremptive, did interruption thereof occur by the filing of defendant's disavowal action in Oklahoma? It is contended by defendant that the limitation is prescriptive and that running of the six month period was interrupted by the Oklahoma action. Plaintiff maintains the period is peremptive and admits of neither suspension nor interruption as held by the courts below.
Our jurisprudence has long recognized a major distinction between a statute of limitations (prescription) and a peremption. It has been repeatedly held that prescription bars the remedy sought to be enforced and terminates the right of access to the courts for enforcement of the existing right. A peremptive statute, however, totally destroys the previously existing right with the result that, upon expiration of the prescribed period, a cause of action or substantive right no longer exists to be enforced. Ashbey v. Ashbey, 41 La.Ann. 102, 5 So. 539 (La.1899); Guillory v. Avoyelles Railway Company, 104 La. 11, 28 So. 899 (La.1900); Brister v. Wray Dickinson Co., Inc., 183 La. 562, 164 So. 415 (La.1935); Succession of Pizzillo, 223 La. 328, 65 So.2d 783 (La.1953); Ancor v. Belden Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (1971).
Recently, in Flowers, Inc. v. Rausch, La., 364 So.2d 928 (1978), we held that peremption is but a form or species of prescription possessing the differentiating characteristic that peremption does not admit of interruption or suspension. Flowers, above, involved cancellation of a state tax assessment for failure to reinscribe.
In Flowers, above, we recognized that peremption is a common law term that has infiltrated our jurisprudence. We noted also that peremption is, in reality, the civil law equivalent of "forfeiture". We so held on the basis of 28 G. Baudry-Lacantinerie & A. Tissier, Traite Theorique et Pratique, De droit Civil, Secs. 38-39, Louisiana State Law Institute Translation, First Part A, Chapter II, General Provision IV, Difference Between Prescription and Forfeiture, pages 23-30, 1972. In short, we adopted the Baudry-Lacantinerie & A. Tissier concept *1199 that there is little if any doctrinal difference between forfeiture and prescription.
We reiterate the following pronouncement in Flowers, above:
"There is indeed a difference between prescription and peremption as noted by the Court of Appeal and as pointed out in the Succession of Pizzillo, supra. Nevertheless we conclude that peremption is but a form of prescription, a species thereof, but with the characteristic that it does not admit of interruption or suspension, and we determine that the constitutional provision barring prescription bars prescription in all its forms, including peremption."
The basic contention in Flowers, above, was that the statute in question was peremptory and that peremption runs against the state despite constitutional provision that prescription does not run beyond the state unless otherwise provided by the Constitution or expressly by law. We applied the principles above mentioned and concluded that peremption, being merely a species of prescription, does not run against the state unless otherwise provided either in the state constitution or expressly by law. La. Const. 1974, Article XII, Section 13; La. Const. 1921, Article XIX, Section 16. We then found statutory authority for the running against the state of the tax assessment reinscription limitation provided by La.R.S. 9:5161-5162.
Since peremption admits of neither interruption nor suspension, our next inquiry is whether the time limitation provided in Article 191, above, is peremptive.
No citation of authority is needed in support of the proposition that our Civil Code is predicated on the Code Napoleon and that in the interpretation of its articles, we look to the interpretation of their French counterparts.
In discussing the time limitation for a husband's disavowal action under the French counterpart of our Article 191, above, Planiol notes that the husband must act within the short period provided "under penalty of forfeiture". Planiol, Traite Elementaire de Droit Civil (Louisiana State Law Institute Translation (1959), Volume 1, page 793, Section 1451. Planiol, also notes, in Section 1451, above, the following:
"The prescription applicable to a suit in disavowal is an extremely short one. It is of one or two months according to circumstances. The husband must act within this short delay under penalty of forfeiture. The law desires that the status of a child, presumed to be legitimate, should not long remain in uncertainty. * * *"
Although Planiol, in this same section, refers to the delay as prescription, he later clarifies this position when discussing the exercise of the husband's rights by his heirs and notes that the delay is not a prescription but rather a pre-established delay entailing forfeiture. Carbonnier also indicates that disavowal is subject to the more restrictive form of statutory time limitation. See Carbonnier, Notes on Liberative Prescription, 50 Revue Trimestrielle de Droit Civil, English Translation, by The Louisiana State Law Institute, Section 16, pages 469-470.
The treatise writers are not in accord as to the differences between prescription and forfeiture. Planiol speaks of "fixed delays" that cannot be suspended or interrupted and considers the delay for the action in disavowal to be in this category. Planiol, above, Secs. 704, 706. On the other hand, Baudry-Lacantinerie & Tissier, are of the view that "the doctrinal distinction between forfeiture and prescription is without practical significance." They also argue against defining "a priori any difference between what are called forfeitures and what is (sic) called prescriptions." Baudry-Lacantinerie & Tissier, Traite Theorique et Pratique de Droit Civil, Louisiana State Law Institute Translation (1972), Prescription, Section 39, page 26, Section 40, page 28. They conclude that each case should be examined separately. Id., Sec. 40.
We agree that each case of this nature should be considered separately on its merits, bearing in mind that the main consideration *1200 is the purpose sought to be achieved by the particular limitation period involved.
The concept that the legal status of a child presumed to be legitimate has, at least by implication, been one of the underlying reasons for our traditional and historical position of zealously guarding and enforcing the presumption created by Article 184, above. Our jurisprudence reflects unwavering dedication to the rule of strict construction of the articles governing disavowal actions. The fundamental end achieved thereby is, of course, preservation of the family unit, the foundation of our society. Further considerations are the stigma of illegitimacy and resultant disinherison attendance upon a successful disavowal action.
We find the above considerations basis for holding the provisions of Article 191, above, to be peremptive.
Defendant argues that because service in the Oklahoma action was made upon plaintiff within the six months limitation, the prescriptive (peremptive) period was interrupted pursuant to La.R.S. 9:5801 which provides that prescription is interrupted by the filing of suit in a court of competent jurisdiction and is also interrupted by service of process on defendant in a suit filed in an incompetent court or improper venue. It is conceded that in this instance service in the Oklahoma action was made on plaintiff within the limitation period.
Under the circumstances of this case neither the filing of the Oklahoma action nor the service made therein is of any consequence.
Since we find that Article 191, above, is peremptive, a special form of prescription which admits of neither suspension nor interruption, Flowers v. Rausch, above, the provisions of La.R.S. 9:5801 are inapplicable inasmuch as we are not here concerned with an interruptible form of prescription.
The judgment is affirmed at defendant's relator's cost.
Affirmed.
SUMMERS, C. J., concurs.
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
We have attacked the problem backward. Having found the Oklahoma suit was timely filed and service timely made, we should then determine how it affected the suit in Louisiana. R.S. 9:5801 says it interrupted all prescriptions.