401 So.2d 453 (1981)
Irving G. KENNEDY, Jr., M. D., et al, Plaintiffs-Appellees,
v.
Robert E. POWELL et al, Defendants-Appellants.
No. 14537.
Court of Appeal of Louisiana, Second Circuit.
June 8, 1981.
Rehearing Denied July 15, 1981.
Thomas V. Gardner, Jr., Asst. City Atty., Monroe, for defendants-appellants Robert E. Powell, et al.
Grant, Scott, Dean & Kneipp by Donald L. Kneipp, Monroe, for defendants-appellants Benjamin M. Peters, Travis Oliver, III, and Gerald W. Merritt.
Hudson, Potts & Bernstein by James A. Rountree, Monroe, for defendants-appellants Brentwood Apartments Partnership and Brockman Builders, Inc.
Bruscato & Loomis by Anthony J. Bruscato, Monroe, for plaintiffs-appellees.
Before PRICE, HALL and JASPER E. JONES, JJ.
En Banc. Rehearing Denied July 15, 1981.
*454 PRICE, Judge.
The mayor and certain city council members of the city of Monroe and several real estate developers, named as co-defendants, have appealed the judgment of the district court voiding an agreement by the city of Monroe to provide water and sewerage services to property outside the city and casting the city for $4,000 in attorney fees based on a finding that La.R.S. 42:4.1 et seq. (the open meeting law) had been violated.
We are of the opinion that plaintiffs' suit was not filed within the sixty-day period prescribed by La.R.S. 42:9, and therefore reverse the judgment appealed.
Plaintiffs, who are residents of the Bon Air section on the northeast perimeter of the city of Monroe, commenced this action on October 17, 1980, against the mayor and five council members to void the agreements whereby the city agreed to allow the developers of an apartment complex and a proposed commercial development on a sixteen acre tract adjacent to the city along Bon Air Drive to connect into the city water and sewerage system upon completion of the projects. Defendants, in addition to the mayor and city councilmen, are Brentwood Apartments Partnership; Brockman Builders, Inc.; Benjamin M. Peters; Gerald M. Merritt; and Travis Oliver, III.
The subject commitments stem from the efforts of Jamar Adcock, one of the Brentwood Apartment Partners, to locate a suitable tract upon which to develop a federally funded apartment project under the Department of Housing and Urban Development regulations. The subject tract was located by a local realtor, Jack Fluck, who made a written inquiry in April 1979 to the city of Monroe as to availability of water and sewerage from the city. At this point in time Monroe operated under the commission form of government with a mayor and two commissioners who had both legislative and administrative functions. By letter dated April 12, 1979, signed by then Mayor Durward Cann, Commissioners Harlan Prestridge and Luther Harper, Fluck was advised that the city would furnish the utilities requested provided the owners petitioned for annexation. Upon receipt of this information, Adcock purchased the sixteen acre tract. Shortly thereafter Adcock sold eight acres of the tract to Benjamin M. Peters, Gerald M. Merritt, and Travis Oliver, III, referred to as the Peters Group herein. Peters desired further assurance that his portion of the property would be allowed to utilize the subject city utilities and he directed a letter on October 18, 1979, to the city council requesting confirmation. Mayor Robert Powell, who succeeded Mayor Cann, replied to Peters by letter of October 19, 1979, assuring Peters he would have no difficulty and advising him his letter had been referred to the acting city planning director. Although the city had no zoning authority over the tract in question since it was outside the city, Mayor Powell and Commissioner Harper advised Peters in a second letter dated October 19, 1979, that any planned development should be in compliance with all code requirements since this would be an important consideration in any contemplated annexation. This letter also assured Peters the present officials would continue to honor the commitments made by the former administration.
In furtherance of his plans to develop the HUD apartment project on the other portion of the tract still owned by him, Adcock prepared a letter dated June 24, 1980, which expanded the prior general commitment by the city and set forth in detail certain costs of installation of water mains which would be prorated between the city and the developer, the obligation of the city to take over maintenance and operating cost of the sewerage lift station after installation by the developer, and the rights of the city to acquire ownership of these utilities after annexation. This letter was signed by Brentwood Apartments, Mayor Powell, and the other city commissioners, Harlan Prestridge and Luther T. Harper.
Plaintiffs contend the agreements made in the aforementioned six letters between the city, the Peters Group, and the Brentwood Apartment Partnership, constitute actions *455 which are null and void because they were done in contravention of the prohibitory provisions of the open meeting law (La. R.S. 42:4.1 et seq.).
By peremptory exception defendants contended that plaintiffs had no cause of action since the right to enforce the voidability provisions of the statute must be brought within sixty days of the action complained of, and that this requirement of the statute constitutes a period of peremption. The trial court found the sixty-day period of the statute was one of prescription, not peremption, and that the time did not begin to run until plaintiffs had knowledge of the action. The court overruled the exceptions on finding that plaintiffs did not become aware of the action until after the Brentwood developer began site preparation in September 1980.
The case was then tried on the merits with the thrust of plaintiffs' evidence being directed to establish that the commitments made to both developers by the city council relating to sewerage services constituted an extension of the city sewerage system which under the law required an ordinance of the city council. Plaintiffs further sought to show that the activities of the mayor and commissioners in executing the letter agreements constituted a "meeting" as this term is defined in the statute ("the convening of a quorum of a public body to deliberate or act on a matter over which the public body as an entity has supervision, control, jurisdiction, or advisory power").
Defendants, on the other hand, took the position that the actions taken by the city officials regarding the sewerage services were purely administrative actions under the powers which had been delegated to the commissioner of finance and utilities, and that no meeting of the council as proscribed by the open meeting statute had taken place. Defendants further took the position that the subject sewerage agreement was merely a proposed connection into the existing sewerage system and not an extension of the city's sewerage system which would require the adoption of an ordinance.
The trial court found from the evidence presented and the stipulations[1] made at trial that plaintiffs had shown that the letters in question culminated in two agreements between the city council of Monroe and the defendant developersone with the Brentwood developers in accord with the June 20, 1980, letter and the Peters Group in accord with the terms set forth in the October 1979 letter. The court found that in both instances the city had made commitments which required legislative action by the council which could only be taken at a properly convened and open meeting of that public body. Therefore the court found that the actions of the mayor and commissioners in executing the letter agreements in the manner described violated the open meeting law and that equitable estoppel as pleaded by defendants would not apply under these circumstances. The court voided the subject agreements, but denied plaintiffs the injunctive relief sought on a finding that they had not shown sufficient irreparable injury to entitle them to that remedy.
Subsequent to the rendition of judgment on December 1, 1980, the Monroe City Council passed an ordinance authorizing the extension of water and sewerage service to the tract in question. On this basis plaintiffs filed a motion to dismiss the appeal as now being moot. Since the judgment rendered *456 awarded plaintiffs attorney fees, the appeal cannot be considered moot.
We do not find it necessary to express an opinion on the correctness of the trial judge's conclusion that the circumstances presented violated the open meeting law as we find the right of plaintiffs to bring such action under the voidability section of the statute no longer existed at the time of the filing of this suit.
La.R.S. 42:9 provides as follows:
Any action taken in violation of R.S. 42:4.1 through R.S. 42:8 shall be voidable by a court of competent jurisdiction. A suit to void any action must be commenced within sixty days of the action.
Plaintiffs' suit was filed more than sixty days following the date of any of the letter agreements which they seek to have voided by the court. They alleged in their petition and sought to prove in the trial court that they did not become aware of the agreements more than sixty days before the filing of suit and contend the time limitation for commencing their action under La.R.S. 42:9 did not begin to run until they acquired this knowledge.[2]
The resolution of the issue depends on whether the period provided in the statute is one of prescription or peremption. The jurisprudence of this state has long recognized the difference in these two principles of law. In the early case of Guillory v. Avoyelles Ry. Col., 104 La. 11, 28 So. 899 (La.1900), the Supreme Court defined peremption as follows:
... When a statute creates a right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not, properly speaking, one of prescription, but it is one of peremption. Statutes of prescription simply bar the remedy. Statutes of peremption destroy the caus e of action itself. That is to say, after the limit of time expires the cause of action no longer exists: it is lost....
In another early case, Belden v. Sherburne, 27 La.App. 305 (La.1875), the court observed:
... the plaintiff's position would be entitled to great weight if the question was within the discretion or equity powers of the Court, or if the law was ambiguous; but there is no room for construction here; the statute in precise terms limits the period within which such suit shall be instituted; and the Court must administer the law as it is, however unwise some of its provisions may appear.
Later cases following the rationale of Guillory are: Ancor v. Belden Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (1971)(holding that La.R.S. 23:1209 of the workmen's compensation statute is a peremptive period); McClendon v. State, 357 So.2d 1218 (La.App. 1st Cir. 1978)(holding that the survival action provided in La.C.C. Art. 2315 is peremptive); Pounds v. Schori, 377 So.2d 1195 (La.1979)(holding that the period provided for bringing the action for disavowal under prior provisions of La.C.C. Art. 191 was peremptive).
The Supreme Court reviewed the prior jurisprudence and discussed the rules for determining whether a period for instituting an action is peremptive or prescriptive in Guidry v. Theriot, 377 So.2d 319 (La. 1979), as follows:
Our jurisprudence has indicated that the test for determining whether a period for instituting an action is peremptive or prescriptive, is whether the statute creating the right also stipulates the time in which it must be exercised. See, for example, Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899 (1900); Matthews v. Kansas City Southern Ry. Co., 120 So. 907 (La.App. 2d Cir. 1929); overruled by *457 Mitchell v. Sklar, 196 So. 392 (La.App. 2d Cir. 1940).
In Pounds v. Schori, 377 So.2d 1195, rendered this day, we addressed the question thus presented and concluded that specification of the time limit for bringing an action in the same statute that created the right of action, is not the sole test of peremption as distinguished from prescription. In Pounds, above, we held that peremption, as differentiated from prescription, is a matter to be determined by legislative intent revealed by the statute in its entirety, including the purpose sought to be achieved.
We additionally noted in Pounds, above, that public policy may also influence the determination of whether a statute is intended to be peremptive rather than prescriptive. We found in Pounds, above, impelling reasons of public policy why the statute therein involved should be held peremptive....
"... Peremption is but a form of prescription, a species thereof, but with the characteristic that it does not admit of interruption or suspension...." Flowers, Inc. v. Rausch, 364 So.2d 928 (La.1978). Also see Comment, "Legal Rights and The Passage of Time," 41 La.L.Rev. 220 (1980), for a well reasoned and scholarly discussion of prescription and peremption.
When the legislature amended the open meeting law in 1979 to provide for the first time the right to an aggrieved party to have the actions of a public body voided as provided in La.R.S. 42:9, it saw fit to limit this right to a short period of sixty days to insure a degree of certainty in the actions of the public body.
Although the preamble to the open meeting statute declares that it should be liberally interpreted to carry out its purpose, we do not believe it to be in the public interest to construe the period for filing an action provided in La.R.S. 42:9 as prescriptive and subject to suspension.
Plaintiffs argue, and the trial court so held, that to apply peremption would allow public officials to frustrate the purpose of the statute by concealing action taken in secret for a period of sixty days.
There is clearly no evidence of any intent or attempt by anyone in the instant case to conceal from the public the agreements which are the subject of this suit.
We think the legislature felt the need to create certainty in the affairs of a governmental body such as a municipality outweighed any danger that public officials would intentionally, or fraudulently attempt to circumvent the rights afforded the public under the open meeting statute.
This is the most logical reason why the legislature provided a restrictive period on the right to sue under the voidability provision of La.R.S. 42:9 and did not place any such restriction on the other remedies such as mandamus, injunction, or declaratory judgment under La.R.S. 42:11. These remedies, as well as other laws in effect prior to the adoption of the open meeting statute would continue to afford the public protection against ultra vires or illegal actions of public bodies.
To accept the premise that the right to sue for voidability is suspended until such time as an aggrieved party has knowledge of the action taken could lead to a state of extreme uncertainty in the administration of public affairs. It should be noted that Section 10 of the statute permits "any person... who has reason to believe that the provisions of R.S. 42:4.1 through R.S. 42:8 have been violated" to institute enforcement proceedings. This unlimited eligibility for prospective plaintiffs would lead to an even greater degree of uncertainty and difficulty in the determination of when a complainant should have had knowledge of the action to begin a period of prescription.
We conclude the sixty-day period provided in La.R.S. 42:9 is one of peremption and therefore plaintiffs' action was untimely and the trial court was in error in not sustaining the exception of no cause of action and peremption.
Defendants requested an award of reasonable attorney fees in the event plaintiffs' action was found to be frivolous as provided by Section 11 of the statute.
*458 Plaintiffs' suit was not frivolous as they presented sufficient evidence on the merits to obtain judgment in their favor in the trial court. The question of peremption on which this court based its discretion is certainly an arguable issue. Therefore, defendants' request for attorney fees should also be denied.
For the foregoing reasons, the judgment appealed is reversed and plaintiffs' demands against all defendants are dismissed. All costs of these proceedings including this appeal are assessed to plaintiffs.
NOTES
[1] Counsel for the city and the Brentwood Partnership stipulated at trial that the letters in question were intended to have the following legal effect:

(1) the City agreed to provide water and sewerage services to the property;
(2) the developer would pay the regular charges for these services;
(3) the developer or owner was obligated to apply for annexation of the property into the City and to offer ownership of the lift station to the City and to offer 15 foot easements on the sewer lines and water line loop to the City;
(4) the City had the option to elect whether to accept the annexation, the lift station and/or the easement; and
(5) the City's obligation to maintain and operate the lift station and service the lines was conditioned upon annexation or acceptance of the lift station and service easements.
[2] The record shows Dr. Irving Kennedy, one of the plaintiffs who spearheaded the opposition in the Bon Air neighborhood to the low income housing project, first learned of its existence when the contractor began work which was within sixty days of filing the action. The initial proposal to start such a project had been made public however at a meeting of the Ouachita Council of Governments held on August 27, 1979, and a newspaper account of this meeting which discussed the proposed project was carried in the Morning World on August 28, 1979.