**REVISED OCTOBER 4, 2001**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 00-30353
_____

DENNIS MARCHESANI; TRIXIE TINA MARCHESANI,

Plaintiffs-Appellants,


SAFETY NATIONAL CASUALTY CORPORATION;
CRESCENT HOSIERY MILLS,

Intervenors-Appellants,


versus

PELLERIN-MILNOR CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
_____

October 3, 2001

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

In this diversity case, we are called on to apply Louisiana's choice of law rules to determine whether Tennessee's ten-year statute of repose for product liability claims bars Plaintiffs-Appellants Dennis and Trixie Tina Marchesani's product liability suit in the district court situated in Louisiana against Defendant-Appellant Pellerin-Milnor Corporation ("Milnor") as manufacturer of the offending product in question. Left to our own devices after the Louisiana Supreme Court declined to accept our certified

question,[1] we conclude that Louisiana's choice of law rules require the Louisiana-based district court to apply Louisiana's own prescriptive and peremptive rules, under which the Marchesanis' claims are not time-barred. We therefore reverse the district court's grant of summary judgment in favor of Milnor and remand for further proceedings consistent with this opinion.

## I.

## FACTS AND PROCEEDINGS

Dennis Marchesani, a domiciliary of Tennessee, was employed by Crescent Hosiery Mills at its facility in Niota, Tennessee. On August 25, 1998, while in the course of his employment, Marchesani was walking past a pressurized apparel dye machine manufactured by Milnor, a Louisiana corporation, when "suddenly and without warning, the door of the machine blew open, releasing hot, caustic chemicals and steam throughout the immediate area," resulting in Marchesani's alleged injuries. All of Marchesani's medical treatment as a result of the accident has taken place in Tennessee, and he has been receiving workman's compensation benefits in Tennessee.

Marchesani and his wife, Trixie Tina Marchesani, filed a products liability suit against Milnor in federal district court for the Eastern District of Louisiana, alleging negligent

---

[1]See Marchesani v. Pellerin-Milnor Corp., 248 F.3d 423 (5th Cir. 2001), certification declined, No. 2001-CQ-1169, —— So. 2d.——, available at 2001 WL 798209 (La. June 29, 2001).

2

manufacture and design of the pressurized dye machine. Marchesani alleges that his injuries were caused by a design defect that permits the machine to be operated even though the door is not completely secure. The suit was timely filed under Louisiana law. Milnor denied liability and moved for summary judgment on the ground that Tennessee law, which restricts products liability suits to claims brought within ten years following the date the product was first purchased for use,[2] applies to the Marchesanis' claims, making their action time-barred. The Marchesanis countered that Louisiana law should govern their action, and in the alternative that the Civil Code's choice of law articles on prescription (statutes of limitation) and peremption (statutes of repose)[3] require that Louisiana's own law of prescription, under which the Marchesanis' claims are timely filed, should govern in this

---

[2]Tenn. Code Ann. § 29-28-103 ("Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within . . . ten (10) years from the date on which the product was first purchased for use or consumption[.]").

[3]La. Civ. Code Ann. art. 5349 provides:

> When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except . . . [i]f the action is not barred under the law of this state, the action shall be maintained unless [1] it would be barred in the state whose law is applicable to the merits and [2] maintenance of the action in this state is not warranted by [a] the policies of this state and its relationship to the parties or the dispute nor by [b] any compelling considerations of remedial justice.

3

instance.  Without mentioning these choice of law articles, the district court granted Milnor's motion for summary judgment, reasoning that (1) Tennessee's substantive law applies to the merits of the Marchesanis' claim, (2) Tennessee's products liability statute of repose is substantive, ergo (3) the Marchesanis' action is time-barred.[4]  The Marchesanis then perfected this appeal.

## II.

## ANALYSIS

A.  <u>Standard of Review</u>

We review a grant of summary judgment <u>de</u> <u>novo</u>, applying the same standard as the district court.[5]  Likewise, we review <u>de</u> <u>novo</u> a district court's determination of state law,[6] granting no deference to that court's interpretation.[7]

---

[4]As an initial matter, we note our disagreement with the district court's determination that our decision in <u>Allison v. ITE Imperial Corp.</u>, 928 F.2d 137 (5th Cir. 1991), controls this case. <u>Allison</u> was decided under Mississippi's significantly different choice of law rules which provide that when, as here, the pertinent contacts do not favor a particular state, the law of the state where the injury occurred should control, unless other considerations point to a "more significant relationship" with another state.  <u>See</u> <u>id.</u> at 143 (internal punctuation omitted) (emphasis added).  As Louisiana's choice of law articles do not follow this approach, <u>Allison</u> is inapposite to the analysis in the instant case.

[5]<u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998).

[6]<u>Allison</u>, 928 F.2d at 139.

[7]<u>Salve Regina College v. Russell</u>, 499 U.S. 225, 238 (1991).

4

B.  Choice of Law Analysis

A federal court considering a diversity case that implicates choice of laws must determine which state's law applies by following the choice of law rules of the forum state.[8] Accordingly, Louisiana's choice of law rules control our determination of whether Louisiana or Tennessee law applies to the Marchesanis' product liability claims.

Article 3545 of the Louisiana Civil Code expressly addresses choice-of-law questions in product liability cases.[9]  Under this article, Louisiana law will be applied in such cases "(1) when the injury was sustained in this state by a person domiciled or residing in this state; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state."[10]  As the Marchesanis neither reside nor are domiciled in Louisiana, article 3545 is clearly inapplicable to the instant case.  Accordingly, we must turn to other articles of the Louisiana Civil Code to ascertain the proper choice of law analysis for this case.

1. Determining the Applicable State Law

---

[8]Erie R. Co. v. Tompkins, 304 U.S. 64 (1938);  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941); Allison, 928 F.2d at 138.

[9] See La. Civ. Code Ann. art. 3545.

[10]Id.

As an initial matter, we must decide whether the law of Tennessee or Louisiana governs. Not surprisingly, the parties vigorously dispute which article of the Louisiana Civil Code governs the choice of law question before us. The Marchesanis argue that article 3549, which relates specifically to issues of prescription and peremption, should be applied to determine whether Tennessee's statute of repose bars their claims. In contrast, Milnor contends that article 3549 is not pertinent because Tennessee's statute of repose is not procedural but substantive, and is an essential and inseparable part of Tennessee's product liability law. We will address these arguments in turn.

The text of article 3549 provides:

> <u>When the substantive law of this state would be applicable</u> to the merits of an action brought in this state, the prescription and preemption law of this state applies. <u>When the substantive law of another state would be applicable</u> to the merits of an action brought in this state, the prescription and peremption law of this state applies, <u>except</u> . . . [i]f the action is not barred under the law of this state, the action shall be maintained <u>unless</u> [1] it would be barred in the state whose law is applicable to the merits <u>and</u> [2] <u>maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice</u>.[11]

As the italicized portions of this article make plain, we must first decide which state's law applies to the merits before resorting to the more specific provisions of article 3549. Accordingly, we must apply the general choice of law rules

---

[11]La. Civ. Code Ann. art. 3549 (emphasis added).

applicable to tort claims, which are set forth in article 3542, to determine whether the law of Tennessee or Louisiana applies to the merits of the Marchesanis' claims.

Article 3542 provides:

> [A]n issue of delictual or quasi- delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.[12]

Article 3515, in turn, is the "general and residual rule" that guides and informs Louisiana's approach to choice of law and is closely paralleled by article 3542. Article 3515 provides that, except as otherwise specified in the part of the Civil Code addressing choice of law,

> an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might

---

[12]La. Civ. Code Ann. art. 3542.

7

> follow from subjecting a party to the law of more than one state.[13]

In sum, the choice of law methodology contained in Louisiana's Civil Code requires that, in sequence, we (1) examine the pertinent contacts of each state with respect to "the particular issue as to which there exists an actual conflict of laws"[14] (so as to determine the "relationship of each state to the parties and the dispute"), (2) identify the various state policies that might be implicated in the choice of law, and then (3) evaluate the "strength and pertinence" of these policies in light of "the relationship of each state to the parties and the dispute," and in light of "the policies and needs of the interstate and international systems" (so as to resolve the ultimate question of which state's policies would be "most seriously impaired if its law were not applied to that issue").[15]  We proceed now to do just that.

    2.  Examination of Pertinent Contacts

Article 3542 (the general choice of law provision for tort claims) instructs us to examine "the pertinent contacts of each state to the parties and the events giving rise to the dispute, including [1] the place of conduct and injury, [2] the domicile, habitual residence, or place of business of the parties, and [3] the state in which the relationship, if any, between the parties

---

[13]La. Civ. Code Ann. art. 3515.

[14]See id., Revision Comment (d).

[15]See, generally, id., Revision Comments.

8

was centered."[16]   The district court correctly concluded that Louisiana and Tennessee have an equal number of such contacts because (1) the place of "conduct," i.e., the "alleged events giving rise to the accident," is Louisiana, but the place of "injury" is Tennessee, and (2) the Marchesanis are domiciled in Tennessee, but Milnor is incorporated and manufactures its products in Louisiana.   Accordingly, the pertinent contacts in this case favor neither Louisiana nor Tennessee law.

3. <u>Identification of Pertinent Policies</u>

Articles 3515 and 3542, taken together, enumerate four policies that must be considered in the choice of law analysis with respect to tort claims: (1) upholding the justified expectations of parties,[17] (2) minimizing the adverse consequences that might follow

---

[16]La. Civ. Code Ann. art. 3542 (emphasis added).  The district court did not expressly consider the third factor, "the state in which the relationship, <u>if any</u>, between the parties was centered" (emphasis added).   In <u>Allison</u>, the district court, applying Mississippi's choice of law rules, decided that when, as in the instant case, there is no preexisting relationship between the parties in a products liability case, the state in which the injured party came into contact with the product of the defendant is the "center of the relationship."  <u>See</u> <u>Allison</u>, 928 F.2d at 142. On appeal, however, we expressed doubts about the "helpfulness" of the "center of the relationship" test in the context of a product liability action (as opposed, say, to the context of whether to apply guest statutes in automobile accident cases), because "the center of the relationship will always be identical to the place of injury."  <u>Id.</u> at n.5.  We went on to note that the language of the Mississippi choice of law provision at issue in that case "makes allowance for the possibility that there will be no relationship between the parties by its use of the phrase 'if any.'"  <u>Id.</u> Although admittedly <u>dicta</u>, this language (bolstered by the use of "if any" in article 3542) suggests that the third factor is likewise inapplicable to the instant case.

[17]La. Civ. Code Ann. art. 3515.

9

from subjecting a party to the law of more than one state,[18] (3) deterring wrongful conduct,[19] and (4) repairing the consequences of injurious acts.[20] In addition, Milnor suggests that the following policies should also play a role in our analysis: (5) discouragement of forum shopping and (6) interstate uniformity of result.[21]

    4. <u>Evaluation of the Policies' "Strength and Pertinence"</u>

We begin the evaluation by emphasizing that under Louisiana's choice of law rules, the ultimate question is not which state has the most "significant interest" in the dispute, but rather which state's <u>policies</u> would be <u>most seriously impaired</u> if its law were not applied to the issue, i.e., the "state which, in light of its relationship to the parties and the dispute and its policies rendered pertinent by that relationship, would bear the most serious legal, social, economic, and other consequences if its law were not applied."[22] Furthermore, the Louisiana legislature has

---

[18]<u>Id.</u>

[19]La. Civ. Code Ann. art. 3542.

[20]<u>Id.</u>

[21]<u>See</u> <u>also</u> La. Civ. Code Ann. art. 3515, Revision Comment (c) (noting that the policies of preventing forum shopping and favoring interstate uniformity of result are "universally acknowledged").

[22]<u>See</u> <u>id.</u>, Revision Comment (b) (explicitly rejecting the "governmental interest" approach). Accordingly, the district court's reliance on <u>Allison</u>'s choice of law analysis is misplaced to the extent that the Mississippi choice of law rules at issue in that case provided that when contacts do not favor a particular state, the law of the state where the injury occurred should control, unless other considerations point to a "<u>more significant</u>

10

made clear that "[w]hat is to be evaluated is not the wisdom or goodness of a state policy, either in the abstract or vis-à-vis the policy of another state, but rather the 'strength and pertinence' of this policy in space."[23]

With these precepts in mind, we turn now to consider the "strength and pertinence" of the various policies identified in this case. At first blush, the policies of (1) upholding the justified expectations of parties, (2) minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state, (3) discouraging forum shopping, and (4) favoring interstate uniformity of result, do not appear sufficiently implicated in this case to weigh very heavily in our analysis. Certainly, a Louisiana corporation engaged in manufacturing products in Louisiana should not be surprised at being subjected to Louisiana's product liability law; for that matter, Tennessee citizens injured in Tennessee have no reason to expect that any law other than that of Tennessee will govern their claims. Neither should we be overly concerned in this case with minimizing the adverse consequences that might flow from subjecting a party to the law of more than one state when the party in question is a manufacturer who, presumably, sells products across

---

relationship" with another state. See Allison, 928 F.2d at 143 (emphasis added). Under Louisiana's choice of law rules, however, we must focus our inquiry on determining which state's policies would be most seriously impaired by not applying that state's law.

[23]See La. Civ. Code Ann. art. 3515, Revision Comment (c).

the United States (and in fact is arguing for the application of the law of <u>another</u> state). Likewise, although it is clear enough that by filing suit in Louisiana the plaintiffs in this case have sought out a forum where their claims are not time-barred, the policy of discouraging forum shopping does not seem as intimately implicated by a suit in which the forum chosen by the plaintiffs —— however advantageous to their interests that forum may be —— is the defendant's state of incorporation and principal place of business as well as the state in which the offending product was manufactured and from which it was shipped.[24] Neither does the policy of favoring uniform interstate results seem to come much into play, particularly given the lack of any "uniform" approach to product liability law throughout the states (demonstrated by the fact that only fifteen states have enacted product liability statutes of repose like that adopted by Tennessee).

Accordingly, the policies specifically identified by Louisiana's own choice of law statute with respect to torts —— deterring wrongful conduct and repairing the consequences of injurious acts[25] —— are the most "pertinent" to the choice of law analysis in this case. The question we must answer, then, is which

---

[24]In this respect, this case is further distinguishable from <u>Allison</u>, in which the defendant was a Delaware corporation; its principal place of business was in Illinois, and its predecessor in interest had manufactured the product in Pennsylvania; and the plaintiffs were Mississippi residents who originally filed suit in Mississippi state court on the basis of an injury that occurred in Tennessee.

[25]La. Civ. Code Ann. art. 3542.

12

state's policies of deterrence and compensation with respect to product liability claims would be <u>most seriously impaired</u> if its law were not applied in the instant case.

Tennessee, for its part, enacted the comprehensive Tennessee Products Liability Act[26] (the "Act"), of which the ten-year statute of repose is a component, in response to the rising costs of responding to and defending product liability suits as well as the associated increases in insurance premiums. Additionally, the Act sought to provide certainty and finality as to the time within which product manufacturers and sellers could be subjected to a liability claim. Presumably, Tennessee was willing to incur higher costs in terms of worker's compensation claims in exchange for providing manufacturers with certainty and consumers with ostensibly lower product costs.

Louisiana, too, has a well-established policy of limiting the time within which plaintiffs must come forward with their claims. Louisiana's prescriptive period for all tort claims, including product liability claims, runs for only one year following the date of the injury.[27] Unlike Tennessee, however, Louisiana has not chosen to enact a peremptive period as a means of effecting its policies of certainty and finality with respect to product liability claims. The two states in question, then, appear to have

---

[26]Tenn. Code Ann. §§ 29-28-101 <u>et</u> <u>seq</u>.

[27]La. Civ. Code Ann. art. 3492. Tennessee's statute of limitations for tort claims is the same. <u>See</u> Tenn. Code Ann. § 28-3-104.

13

struck different bargains with respect to balancing, on one hand, the goals of certainty and finality with, on the other hand, the goals of deterrence and compensation.

Our task is most decidedly not to determine which state has struck the better bargain, but rather to evaluate which state's general scheme would suffer more damage, i.e., which would be more adversely affected, if its law were not applied. Asked as a rhetorical question, would Tennessee's comprehensive scheme of product liability, which focuses on the date that the product is first purchased for use, be more seriously impaired if Tennessee's statute of repose were not applied to this case involving Tennessee residents, employers, and worker's compensation payments than would Louisiana's scheme, which focuses on the date of the victim's injury, thereby affording a Louisiana manufacturer an "escape hatch" that would not be available if the injury had occurred either in Louisiana or to an individual domiciled in Louisiana?

Although the question is a close one, particularly given the need to make a value judgment on such a slippery slope as public policy, we agree initially with the district court that the law of Tennessee applies to the merits of this case, although we arrive at that conclusion by a somewhat different route. Unlike the district court, which believed itself bound by our decision in Allison, we do not see that case (which was decided under Mississippi's significantly different choice of law rules) as controlling here. Rather, our independent analysis of the respective policy interests

14

that each state has in having its law applied to the merits of this case leads us to conclude that it is Tennessee, with its more comprehensive approach to product liability claims, whose policies would be most seriously impaired if its law were not applied in this instance.

C. <u>Louisiana's Choice of law Provision for Prescription and Peremption</u>

Our conclusion that the law of Tennessee applies to the merits of the Marchesanis' claims does not end the inquiry, however.  The Marchesanis contend that even if the law of Tennessee governs the merits of their claims, Louisiana Civil Code Article 3549, which applies with respect to both prescription <u>and</u> peremption, precludes the application of Tennessee's peremptive statute of repose to bar their claims.  Conversely, Milnor contends that article 3549 is inapplicable to the instant case and, in the alternative, that maintenance of this action in Louisiana is not warranted by Louisiana policies or by any compelling considerations of remedial justice.

As quoted above, article 3549 provides as follows:

> When the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and preemption law of this state applies.  <u>When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except</u> . . . [i]f the action is not barred under the law of this state, the action shall be maintained unless [1] it would be barred in the state whose law is applicable to the merits and [2] maintenance of the action in this state is not warranted by the

15

> policies of this state and its relationship to the parties or the dispute [3] nor by any compelling considerations of remedial justice.[28]

For the purposes of article 3549, "peremption" —— defined by the Louisiana Civil Code as "a period of time fixed by law for the existence of a right, [which] [u]nless timely exercised . . . is extinguished upon the expiration of the peremptive period"[29] —— "is treated as a species of liberative prescription."[30] Under Louisiana law, then, if a statutory time limit bars the <u>enforcement</u> of a substantive right or cause of action, it is prescriptive; if, instead, the statutory time limit affects the very <u>existence</u> of the right granted, i.e., terminates the cause of action, it is peremptive.[31] Furthermore, under Louisiana law, "when an ordinance or statute creates a right of action and fixes the time in which to commence the action, the time so fixed is an integral part of the right created and is peremptive or substantive, as opposed to

---

[28]La. Civ. Code Ann. art. 3549 (emphasis added).

[29]La. Civ. Code Ann. art. 3458.

[30]La. Civ. Code Ann. art. 3549, Revision Comment (a).

[31]<u>See</u> <u>Pounds v. Schori</u>, 377 So.2d 1195, 1198 (La. 1980) ("Our jurisprudence has long recognized a major distinction between a statute of limitations (prescription) and a peremption. It has been repeatedly held that prescription bars the remedy sought to be enforced and terminates the right of access to the courts for enforcement of the existing right. A peremptive statute, however, totally destroys the previously existing right with the result that, upon expiration of the prescribed period, a cause of action or substantive right no longer exists to be enforced.").

16

prescriptive or procedural."[32] Accordingly, there can be no real question that, under either Tennessee or Louisiana law, Tennessee's statute of repose, which Louisiana would label "peremptive," is substantive rather than procedural.[33] The procedural/substantive dichotomy is immaterial to our inquiry today, however, because Louisiana's choice of law rules do not distinguish between "substantive" and "procedural" statutory time limits, instead treating peremption as a "species of prescription" for purposes of choice of law analysis.[34] In light of this clear directive, we have no choice but to follow it to the inexorable conclusion that Louisiana's law of prescription, under which the Marchesanis' claims are not time-barred, controls this case.

Article 3549 also provides, however, that notwithstanding the fact that an action otherwise time-barred under the law of another state can proceed under Louisiana's law of prescription and peremption, if "the maintenance of the action in [Louisiana] is not warranted by the policies of [Louisiana] and its relationship to the parties or the dispute nor by any compelling considerations of

---

[32]Houston Industries, Inc. v. Fitch, 752 So.2d 974, 976 (La. Ct. App. 2000) (writ denied).

[33]See also Allison, 928 F.2d at 144 ("The parties do not dispute that the Tennessee statute of repose is substantive. It is not a simple statute of limitations and has been construed as being substantive."); Winsor v. Taylor, 118 So. 876, 880 (La. 1928) (noting that "the so-called prescription by which tax titles are quieted . . . has been more appropriately referred to as a statute of repose, or peremption, rather than prescription") (emphasis added).

[34]See La. Civ. Code Ann. art. 3549, Revision Comment (a).

17

remedial justice,"[35] then the claim should not go forward in Louisiana. Accordingly, Milnor attempts to benefit from this statutory shield by arguing that even if a straightforward application of article 3549 would otherwise permit the Marchesanis' claims to advance under Louisiana's law of prescription, the maintenance of this action in Louisiana is not warranted either by Louisiana's policies or by any compelling considerations of remedial justice.

Milnor's reach, however, exceeds its grasp of article 3549's high standards for displacing Louisiana's law of presciption. Article 3549 makes clear that its provisions "reaffirm. . . the basic rule of the lex fori [law of the forum, here Louisiana] for actions that have been filed timely under Louisiana prescription or peremption law[;]" the rationale for this rule is to "promote[] whatever substantive policies [Louisiana] has in not providing for a shorter prescriptive period[.]"[36] These substantive and procedural policies are entitled to preference in a Louisiana court "unless it is amply demonstrated that neither set of policies is actually implicated in the particular case and that the opposing substantive policies of another state, that of the lex causae [law of the place of injury, here Tennessee], are implicated more intimately."[37] Only when both requirements are satisfied may

---

[35]See La. Civ. Code Ann. art. 3549.

[36]Id., Revision Comment (g).

[37]Id.

18

Louisiana law be displaced.[38]

Under the instant facts, it is difficult if not impossible to maintain that the policies of deterrence, compensation, and predictability underlying Louisiana law with respect to product liability claims are not "actually implicated" in this case such that applying Louisiana's law of prescription is not warranted. We reach this conclusion not by any imprudent attempt to divine meaning from Louisiana's legislative election not to enact a product liability statute of repose of its own, but rather by attending to the policy implications of what the Louisiana legislature has done, which is to limit plaintiffs to one year following the date of injury to bring their claims forward. Likewise, we must also be mindful that in enacting choice of law rules that privilege Louisiana's own rules of prescription, the legislature expressly declared that it did so to "preserve[] to the plaintiff the opportunity to fully pursue his judicial remedies as long as he does so within the time specified by the law of this state."[39]

Neither has the Louisiana legislature left us entirely bereft of guidance as we attempt to navigate the murky waters of policy analysis in our search to ascertain whether maintenance of the Marchesanis' action is "not warranted by the policies of

---

[38] Id.

[39] Id.

19

[Louisiana]." We are cautioned that "if <u>none</u> of the parties are domiciled in this state and neither they nor their dispute are related to this state in any other significant way," then "the policies of this state would not be served by imposing on its overburdened courts the adjudication of a dispute which, but for the existence of jurisdiction, is essentially a foreign dispute."[40] Such is not the case here, however, as the defendant manufacturer is domiciled in Louisiana and the legislature has expressly noted that "if the defendant is a Louisiana domiciliary, there would seem to be less of a concern about forum shopping by the plaintiff and less of an argument of unfair surprise by the defendant."[41]

We are also instructed that "if the plaintiff is a Louisiana domiciliary, then dismissing his action would deprive him of the opportunity to litigate in the most convenient forum, and would close to him the doors of the judicial system which he helps sustain through his taxes."[42] In such a case, "dismissal . . . might not be warranted in light of the policies of this state derived from its relationship to the plaintiff."[43] Here, such concerns are not implicated by the Tennessee plaintiffs, so yet again we confront factors that would lead our analysis in opposite directions. Even if both factors should point our analysis in the

---

[40]<u>Id.</u>, Revision Comment (i) (emphasis added).

[41]<u>Id.</u>

[42]<u>Id.</u>

[43]<u>Id.</u>

20

same direction, however, the Louisiana legislature has made clear that the question whether maintenance of the action is warranted by the policies of Louisiana "should be determined by the court by examining all the circumstances surrounding the particular case"[44] and not merely by a mechanical tabulation of factors.

Bearing all the foregoing in mind and remembering that time bar is an affirmative defense, which here is advanced by Milnor, we are convinced in the end that Milnor has failed to demonstrate that, under all relevant circumstances, maintenance of this action is not warranted by the policies of Louisiana. The plaintiffs in this case, although residents of Tennessee, have neither slept on their rights nor engaged in the kind of purely opportunistic forum shopping that would raise concerns about burdening Louisiana courts with entirely "foreign disputes" or surprising defendants unfairly. To the contrary, the plaintiffs have filed suit in the state of the defendant's own incorporation and principal place of business, which is also the state in which the allegedly defective product was designed and manufactured. We can hardly say that the maintenance of this action, timely brought under Louisiana's law of prescription against a Louisiana manufacturer, is not warranted — even mandated — by the policies of Louisiana that underlie its own long-standing policy decision to permit plaintiffs allegedly injured by a defective product to bring a cause of action within one year following that injury.

---

[44]Id.

We are likewise convinced that Milnor has failed to make an alternative showing under article 3549 that maintenance of this action in Louisiana is not warranted by "compelling considerations of remedial justice."  We are mindful of the Louisiana legislature's admonition that we should not interpret this requirement "as a command or even as a license for entertaining a particular action simply because it is barred in <u>all</u> or <u>most other</u> states.  Such egregious examples of forum shopping . . . are neither encouraged nor condoned by this [a]rticle."[45]  We are not dealing, however, with a situation in which the Marchesanis' cause of action is barred in "all or most other states" save Louisiana, but rather one in which the cause of action would be permitted to go forward in the great majority of states, including Louisiana. Under these circumstances, Milnor has failed to convince us that "compelling considerations of remedial justice" do not warrant — indeed, require — the maintenance of this product liability action in Louisiana against a Louisiana manufacturer.

Accordingly, we hold that under Louisiana's choice of law rules, Louisiana's law of prescription governs (and accordingly does not bar) prosecution in that state of the Marchesanis' product liability claims against Milnor.[46]  In so doing, we are cognizant of Milnor's contention that article 3549 was "doubtless drafted

---

[45]<u>Id.</u>, Revision Comment (j) (emphasis added).

[46]We therefore do not reach the Marchesanis' claim that Tennessee's statute of repose, as applied to them, is unconstitutional.

22

with the idea that there would be little conceptual difference between replacing one state's procedural prescriptive rules with another's."  We are not called on to read Louisiana's legislative mind, however, but to interpret and apply a statute that on its face encompasses <u>both</u> procedural, prescriptive rules <u>and</u> substantive, peremptive provisions such as Tennessee's ten-year statute of repose.  Our task, when making an <u>Erie</u> guess as to how the Louisiana Supreme Court would rule if squarely faced with this issue, is to attempt "to predict state law, not to create or modify it."[47]  Should the Louisiana legislature decide that a different approach than that currently embodied in its choice of law articles is called for, it is certainly free to enact that legislative judgment into law and knows how to do so.

In reversing summary judgment and remanding for further proceedings, we decide only that the Marchesanis' cause of action is not time-barred in Louisiana by Tennessee's ten-year statute of repose.  Accordingly, we take no position on either the merits of the Marchesanis' claims or any procedural issues not yet addressed by the district court.

### III.

### CONCLUSION

For the reasons explained above, the district court's grant of

---

[47]<u>United Parcel Service, Inc. v. Weben Industries, Inc.</u>, 794 F.2d 1005, 1008 (5th Cir. 1986) (citation omitted).

23

summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.