# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 16, 2012

No. 10-30393

Lyle W. Cayce
Clerk

LARRAINE MCGEE, as Surviving Mother of Chris Everett and on behalf of the Estate of Chris Everett; PATRICK EVERETT, as Surviving Father of Chris Everett,

Plaintiffs-Appellants

v.

ARKEL INTERNATIONAL, LLC,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The parents of a National Guardsman killed in an accident in Iraq brought suit against a civilian contractor who they claimed was responsible. They argued that Iraqi law governs the limitations period within which the suit needed to be brought. The district court held both that Iraqi law was not sufficiently proven and that the claims were barred by Louisiana's one-year prescriptive period. We REVERSE and REMAND for further proceedings.

No. 10-30393

## STATEMENT OF FACTS

Sergeant Christopher Everett was a Texas Army National Guardsman mobilized onto active duty in the United States Army and deployed to Iraq. On September 7, 2005, while at the Camp Taqaddum military base in Iraq, he was electrocuted. The accident occurred while Sergeant Everett was using a power washer to clean a Humvee. The Army's post-accident investigative report stated that the cause was an improperly connected neutral grounding wire on the generator, which supplied electricity to the power washer. The report further stated that the defect "created an open short that when closed by [Sergeant] Everett resulted in the current conducting through his body."

The plaintiffs are Larraine McGee and Patrick Everett, parents and heirs of the deceased. They were told of their son's death soon after the accident. It was not until December 15, 2005, though, that the Army delivered to them a packet of information about what had happened. Although the plaintiffs contend they were unaware of the involvement of Arkel International, L.L.C. until April 2008, Arkel was mentioned in the documents in the packet.

At the time of the accident, Arkel's contract with the United States made it responsible for the maintenance and repair of generator equipment at Sergeant Everett's base. Arkel defends by contending the generator was not an Arkel product and Arkel was not the primary cause of Sergeant Everett's death. Instead, improper grounding of the generator was the cause.

The plaintiffs have brought suit in different venues. Arkel is a limited liability company domiciled in Baton Rouge, Louisiana. The plaintiffs are residents of Texas. In August 2008, the plaintiffs brought suit in Texas state court for damages, claiming wrongful death under Iraqi Civil Code Articles 202-

No. 10-30393

203. The plaintiffs alleged that defendants Arkel, KBR Technical Services, Inc., and Kellogg, Brown & Root Services, Inc. acted negligently by failing to maintain the generator and that such negligence proximately caused Sergeant Everett's death, resulting in the plaintiffs' damages. The defendants successfully removed that action to federal court.

In September 2008, while the Texas action was pending, the plaintiffs filed an identical action in Louisiana state court. Once again, the defendants removed the action to federal court, but the action was stayed pending a judgment in the Texas proceedings. In April 2009, the Texas federal court granted the plaintiffs' motion to dismiss without prejudice, noting its belief that the plaintiffs' claims arose under Iraqi law and that any court adjudicating them would apply Iraqi law. *McGee v. Arkel Int'l, LLC*, 716 F. Supp. 2d 572, 582 (S.D. Tex. 2009). Three months later, the Louisiana federal court granted the plaintiffs' motion to dismiss defendants KBR Technical Services and Kellogg, Brown & Root Services leaving Arkel as the sole remaining defendant. That September, the Louisiana federal court lifted the stay and reopened the action.

Arkel moved for summary judgment, arguing that the plaintiffs' claims were barred by Louisiana's one-year prescriptive period. The plaintiffs argued that under Louisiana choice-of-law rules, a longer period under an Iraqi statute of limitation applied. The district court granted summary judgment and dismissed the action with prejudice. This judgment is before us today.

On summary judgment, Arkel did not present any statutory or doctrinal defenses beyond the ones we will address on this appeal. We have to decide whether, under Louisiana choice-of-law principles, Iraqi law governs this action and Iraq's three-year prescriptive period applies.

No. 10-30393

DISCUSSION

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Questions of fact are viewed in the light most favorable to the nonmovant and questions of law are reviewed *de novo*." *Deas v. River W., L.P.*, 152 F.3d 471, 475 (5th Cir. 1998). A choice-of-law determination is reviewed *de novo. Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004).

The district court ruled that Iraqi law was inapplicable under Louisiana choice-of-law principles, and that the plaintiffs failed to prove Iraqi law and were barred by Louisiana's one-year prescriptive period for wrongful death and survival actions. A separate and preliminary issue was resolved in the plaintiffs' favor, namely, that Order Number 17 issued by the Coalition Provisional Authority ("CPA Order 17") did not provide immunity to Arkel. The Coalition Provisional Authority was established in 2003 as a transitional government following the fall of Saddam Hussein's regime. It was dissolved on June 30, 2004. CPA Order 17 is applicable to contractors working in Iraq for the United States Department of Defense. Not resolved was whether parents of a deceased were proper parties under Iraqi law.

Louisiana's prescriptive period for survival and wrongful death actions is one year from the date of death. La. Civ. Code arts. 2315.1(A), 2315.2(B). The prescriptive period under Iraqi law for such claims is three years from the day

4

No. 10-30393

on which the injured person became aware of the injury and of the person who caused it. Iraqi Civ. Code art. 232.

Sergeant Everett was electrocuted on September 7, 2005. Among the questions posed by the case is when notification to the plaintiffs of the reasons for his death was sufficient to begin the relevant statute of limitations period. The plaintiffs brought this action on September 8, 2008. The plaintiffs concede that their claims are barred under Louisiana's one-year prescriptive period. They contend that Louisiana's choice-of-law principles provide for the application of Iraqi law and, under that law, their claims were timely brought. We must determine which law controls.

Federal courts sitting in diversity apply the choice-of-law rules of the forum state to identify the substantive law that applies. *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010). Therefore, Louisiana choice-of-law rules are controlling, as the parties agree.

I.    *Louisiana Choice-of-Law Principles*

Louisiana's choice-of-law rules require us to make two decisions at this point: does Iraqi or Louisiana law apply to the merits, and which law applies to the statute of limitations issue? *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 486 (5th Cir. 2001).

Civil Code Article 3542 sets forth Louisiana's general choice-of-law rules for tort claims. *Id.* Tort claims are "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3542.[1] The state whose policies would be most seriously impaired "is determined by evaluating the strength and pertinence of

---

[1] "State" in this part of the Code includes a foreign country. La. Civ. Code art. 3516.

5

No. 10-30393

the relevant policies of the involved states" after considering the factors provided in that Article. *Id.*

Arkel argues that this language requires Louisiana substantive law to apply because Iraq has no interest that would be affected by claims brought by the heirs of a deceased American soldier against a possibly culpable American company. Even if that characterization is true, Article 3542 is merely the general choice-of-law rule applicable to tort claims. *Id.* art. 3542 cmt. (a). The Article's introductory language limits its reach: "Except as otherwise provided in this Title . . . ." *Id.* art. 3542. A comment states that Article 3542 "is further implemented by specific rules contained in Articles 3543-3546" and, because Articles 3543-3546 are more specific, they should, "when applicable, prevail over" Article 3542. *Id.* art. 3542 cmt. (b); *see generally Wartelle v. Women's & Children's Hosp., Inc.*, 704 So. 2d 778, 783 (La. 1997) ("While the revision comments do not form part of the law, they were presented together with the proposed legislation and illuminate the understanding and intent of the legislators.").[2]

A more specific rule for our purposes is in Article 3543:

> Issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct.

La. Civ. Code art. 3543. In explaining this Article's relationship to Article 3542, the comments make clear that Article 3543 will "prevail" over Article 3542 when its rules are "more specific" to the issues. *Id.* art. 3543 cmt. (b); *see also Fietz v.*

---

[2] Another article provides that Article 3542 will control when it is clearly evident that policies of another state would be more seriously impaired if its laws were not applied, but no such clear evidence is present here. La. Civ. Code art. 3547.

No. 10-30393

*Southland Nat'l Ins. Co.*, 484 F. Supp. 2d 535, 548 (W.D. La. 2007).  The law of the state in which both the wrongful conduct and resulting injury occurred will apply "regardless of the domicile of the parties or any other factors."  La. Civ. Code art. 3543 cmt. (d).  Here, the conduct of alleged negligence in maintaining and repairing the generator, and the resulting injury of Sergeant Everett's death, both occurred in Iraq.  Article 3543 applies.

Accordingly, Iraq's substantive law applies to the merits.  Nevertheless, Arkel contends that Iraqi law cannot apply because CPA Order 17 exempted contractors from Iraqi laws or regulations.  We now turn to CPA Order 17.

II.    *CPA Order 17*

CPA Order 17 was signed into law the day before the CPA was dissolved. No one argues that the order was rescinded or altered prior to the filing of this suit.  *See* Coalition Provisional Authority Order No. 100 (CPA orders remain in force unless rescinded or amended by legislation).  Arkel contends that the order makes it immune from Iraqi laws and Iraqi legal process:

> 2) Contractors shall not be subject to Iraqi laws or regulations in matters relating to the terms and conditions of their Contracts . . . .
>
> 3) Contractors shall be immune from Iraqi legal process with respect to acts performed by them pursuant to the terms and conditions of a Contract or any sub-contract thereto.

Coalition Provisional Authority Order No. 17 § 4 (Revised) (June 27, 2004), *available at* http://www.iraqcoalition.org/regulations/.

In its ruling on summary judgment, the district court held that CPA Order 17 provides immunity to contractors from being sued in Iraq and from such Iraqi laws as relate to the terms and conditions of contracts.  No immunity from tort

7

claims resulted from that provision. The court further stated that CPA Order 17 did not provide immunity to Arkel for the plaintiffs' tort claims brought in federal court in Louisiana. We agree. Although CPA Order 17 provides contractors immunity from Iraqi laws relating to their contractual "terms and conditions" and from Iraqi legal process, it does not create an immunity from Iraqi laws relating to tort claims brought in federal court in the United States.

A different provision of CPA Order 17 addresses tort claims. It provides that personal injury claims are to be "dealt with" consistently with "the Sending State's [here, Louisiana's] laws, regulations and procedures."

> Except where immunity has been waived in accordance with Section 5 of this Order, third-party claims including those . . . for personal injury, illness or death . . . arising from or attributed to acts or omissions of . . . Contractors or any persons employed by them for activities relating to performance of their Contracts, whether normally resident in Iraq or not and that do not arise in connection with military operations, shall be submitted and dealt with by the Sending State whose personnel . . . are alleged to have caused the claimed damage, in a manner consistent with the Sending State's laws, regulations and procedures.

Coalition Provisional Authority Order No. 17 § 18 (entitled "Claims").

This provision was not discussed in the appellate briefs and was barely mentioned in arguments before the district court. The response from the district court was that Arkel's argument was circular.

Section 18 is a choice-of-law provision. All it does is require us to look at the law of Louisiana as the "Sending State." Section 18 requires claims to be "submitted and dealt with . . . in a manner consistent with the Sending State's laws, regulations and procedures." Included in that law is the state's choice-of-law principles. Consequently, if the plaintiffs' claim is "submitted and dealt with

. . . in a manner consistent" with Louisiana law, that law uses Iraqi law for the standards of conduct and safety. It also in some circumstances borrows the period of limitations. Section 18 restates what the law of the forum state for the current suit, Louisiana, already required. It is superfluous here.

It might be argued that Section 18 of CPA Order 17 is not a choice-of-law rule but is instead substantive. We do not interpret it that way. It speaks of claims being "submitted and dealt with" consistent with another country's laws and procedures. CPA Order 17 does not alter the application of Louisiana Civil Code Article 3543. We now turn to the Article that governs choice of law for prescriptive periods.

III.    *Application of Article 3549(B)*

Louisiana Civil Code Article 3549 provides the rules governing prescription, *i.e.*, the statute of limitations provisions. It first states that when the substantive law of Louisiana would apply to the merits of an action brought in that state, Louisiana's prescription law applies. Art. 3549(A).

When, as here, the substantive law of another state is applicable to the merits, Article 3549(B) provides a different set of rules:

> When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, *except* as specified below:
>
> (1) If the action is barred under the law of this state, the action *shall be dismissed unless* it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.

*Id.* art. 3549(B) (emphasis added).

No. 10-30393

We are concerned only with the exception under Article 3549(B)(1). It applies when (1) the action is barred under Louisiana prescription law (2) but not under the prescription law of the state whose substantive law applies to the merits of the action. *Id.* art. 3549 cmt. (d). The plaintiffs argue their claims satisfy this exception. If so, the action is barred (3) unless maintenance of the action in Louisiana is "warranted by compelling considerations of remedial justice." *Id.* art. 3549(B)(1); *see also id.* art. 3549(B)(1) cmts. (d)-(f). Of these three conditions for maintenance of the suit, there is no dispute that the one-year Louisiana period for filing was not met. We thus must analyze whether Iraqi law would allow the suit to proceed and, if so, whether "compelling considerations of remedial justice" warrant the suit.

*A. Iraqi Law*

There are two considerations in determining whether the action would be barred under Iraqi law. The first is whether CPA Order 17, effectively a component of Iraqi law for our purposes, "bars" the suit in the manner relevant under the Louisiana Civil Code Article 3549(B). That Code section is entitled "Law governing liberative prescription." The potential bar of another state becomes relevant only when "the prescription and peremption law of this state," *i.e.*, Louisiana, would bar the suit. La. Civ. Code art. 3549(B)(1). Consequently, the bar that is relevant is the comparable limitations period in the foreign state.

It could be argued that because this specific claim cannot be brought in Iraq due to CPA Order 17, it is barred for all purposes including those under Article 3549. It would be fair to say that Iraqi courts at the time of Sergeant Everett's death would not entertain a suit brought against a Louisiana-resident company who contracted with the Coalition Provisional Authority and whose

alleged negligence while performing under that contract caused the death of a service member in Iraq. Thus, perhaps there is no limitations period applicable to such a suit that can be applied. Whether that is the right view, or whether we only need to know what the Iraqi limitations period would be for personal injuries claims generally, is a matter to be decided under Louisiana law inasmuch as it is that state's choice-of-law rules we are interpreting. Both Article 3543 and 3549 are relevant.

As we have stated, Article 3543 adopts the "standards of conduct and safety . . . of the state in which the conduct that caused the injury occurred." La. Civ. Code art. 3543. That Article has been authoritatively interpreted to be based on the sense that the conduct-regulating rules of the jurisdiction in which the conduct occurred should usually apply. "When acting outside the state of their domicile, neither the tortfeasor nor the victim should be allowed to carry with them the conduct-regulating law" of the state of their origin. La. Civ. Code art. 3543 cmt. (c).

Article 3549(B) provides in certain circumstances for applying a more forgiving limitations period from the foreign state "whose law would be applicable to the merits" of the suit. La. Civ. Code art. 3549(B)(1). CPA Order 17 provides that Arkel is "immune from Iraqi legal process," but it does not in any apparent way bar the application of Iraqi law to the conduct if some other forum for the claim exists. Louisiana is potentially such a forum.

The language of Article 3549(B) is that a suit "shall be dismissed unless it would not be barred" in the other state whose law applies to the merits. The provision does not suggest we should examine whether legal process could reach the defendant in Iraq. The bar with which Article 3549(B) is concerned is

11

whether the time for bringing suit has expired in the foreign state. CPA Order 17 effectively prevents an Iraqi court from acquiring personal jurisdiction over Arkel. That sort of limitation is not relevant under Article 3549(B).

In conclusion on this issue, we summarize the key provisions. Louisiana choice-of-law rules borrow the substantive law of Iraq for standards of conduct and safety. No one has argued that Iraqi law is without standards of conduct and safety applicable to the kind of event that killed Sergeant Everett. For our purposes, Iraqi law also includes CPA Order 17. Section 4(3) of the Order immunized Arkel from Iraqi legal process. That means Arkel could not be brought before any court in Iraq on the claim. Section 18 of CPA Order 17, claims such as this are to be "submitted and dealt with" consistently with Louisiana law. We are applying Louisiana law to this claim.

We next turn to whether the relevant Iraqi statute of limitation would bar the suit. The plaintiffs claim a three-year prescriptive period applies under Iraqi law. Before we can even decide if that is true, we must first decide whether Iraqi law has been proven under Federal Rule of Civil Procedure 44.1.

*B. Iraqi Law Determination*

Arkel contends that the plaintiffs failed to prove Iraqi law because the only English translation of the Iraqi Civil Code is from 1990. At the summary judgment hearing, the district court ruled that the plaintiffs failed to meet their burden of proving Iraqi law.

The plaintiffs have the burden of proving foreign law. *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1006 (5th Cir. 1990). These plaintiffs were "obligated to present to the district court clear proof of the relevant . . . legal principles." *Id.* To determine foreign law, Rule 44.1 states

that "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1. Accordingly, a district court's foreign-law determination is reviewed *de novo*. *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999). Though proof of a foreign country's law is a plaintiff's burden, the court may "engage in its own research on an issue of foreign law," and such research does not require formal notice to the parties. Fed. R. Civ. P. 44.1 cmt. "[T]he rule provides flexible procedures for presenting and utilizing material on issues of foreign law by which a sound result can be achieved with fairness to the parties." *Id.*

To prove Iraqi law, the plaintiffs offered two affidavits of Feisal Amin Istrabadi, an expert on Iraqi law. In his first affidavit, Istrabadi discussed Iraq's three-year prescriptive period for delictual acts, *i.e.*, a wrongful act or omission giving rise to a claim for compensation. *See Black's Law Dictionary* 492 (9th ed. 2009). In his supplemental affidavit, he provided a full-text translation of Article 232 of the Iraqi Civil Code, Iraq's prescription statute for delictual acts (torts), in addition to a website where Article 232 could be found in Arabic. According to Istrabadi's translation, Article 232 states:

> An action for compensation based upon a delictual act is not allowed after the passage of three years from the date on which the injured party knew of the occurrence of the injury and of the person who caused it, nor is an action allowed in all cases after the passage of fifteen years from the date on which the delictual act occurred.

Istrabadi also stated that Article 232 is a discovery statute that begins once the claimant learns of two things – the occurrence of the injury and the person who

No. 10-30393

caused it. He further stated that only when both conditions are satisfied "does the three-year prescription begin to run."

Although Arkel maintains that Istrabadi's translation is inconclusive, it does not put forth any alternative translation of the Iraqi Civil Code. Arkel cites to a website containing a 1990 English translation of Article 232. That translation provides the same understanding:

> A claim for damages resulting from whatever (kind) of unlawful act shall not be heard after the lapse of three years from the day on which the injured person became aware of the injury and of the person who caused it; in all cases the claim will not be heard after the lapse of 15 years from the day of occurrence of the unlawful act.

Iraqi Civ. Code art. 232, *available at* http://gjpi.org/library/primary/statutes.[3]

We also have examined sources for Iraqi law, under the authority provided by Rule 44.1. We discover nothing to draw into question that the prescriptive period ends three years after a plaintiff becomes aware of the claim and the allegedly culpable party. As Arkel did not put forth any alternative translation and has not suggested how the translation might be inaccurate, we hold that Iraqi law on the period of prescription has been proven. *See Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*, 575 F.3d 491, 498 n.8 (5th Cir. 2009) (foreign law sufficiently proven where party submitted English translations of relevant statutes and opposing party had not alleged that the translation was inaccurate or misrepresented foreign law).

Thus, Iraq has a three-year prescriptive period for tort claims that starts on the day the victim became aware of the injury and of the person who caused

---

[3] This website contains a disclaimer: "Please do not rely upon these laws as accurate and up to date." Under Rule 44.1, we conclude the translation is relevant despite the disclaimer as a confirmation of the translation offered by Istrabadi.

it. The summary judgment evidence reflects that the plaintiffs did not become aware of Arkel's alleged responsibility for their son's death until December 2005. At the hearing on summary judgment, the district court stated that the plaintiffs had failed to prove what Iraqi law was or "that they complied with Iraqi law that might be applicable." The district court's discussion of the issue, however, focused on whether the plaintiffs had satisfied their burden to prove Iraqi law, not whether they had failed to comply with Iraq's statute of limitations. The court did not explicitly address whether, if Iraqi law were adequately proven, the plaintiffs could show that they complied with that law.

We decline to determine an issue on summary judgment not clearly addressed by the district court. There was evidence presented in the district court that the earliest date on which the plaintiffs had notice of Arkel's participation was in December 2005. The plaintiffs brought suit in September 2008. Based on the information now before us, the plaintiffs' claims have not been shown to be barred under Iraqi law. A final determination, based on findings of when plaintiffs became aware of the injury and Arkel's possible role, can be made on remand.

*C. Compelling Considerations of Remedial Justice*

Because the action is barred under Louisiana law but may not be barred under Iraqi law, the remaining issue under Article 3549(B) is whether "maintenance of the action in [Louisiana] is warranted by compelling considerations of remedial justice." La. Civ. Code art. 3549.

The comments to the Civil Code acknowledge that the "remedial justice" concept was borrowed from the 1987 Revision of Section 142 of the Restatement, Second, of Conflict of Laws. *Id.* art. 3549 cmt. (f). The Restatement refers to

No. 10-30393

cases where:  (1) "through no fault of the plaintiff an alternative forum is not available as, for example, where jurisdiction could not be obtained over the defendant in any state other than the forum or where for some reason a judgment obtained in the other state having jurisdiction would be unenforceable in other states"; and (2) "suit in the alternative forum, although not impossible would be extremely inconvenient for the parties."  *Id.* (quoting Restatement (Second) of Conflict of Laws, 1986 Revisions, § 142 cmt. (f)).  This exception is "intended . . . to be used in only the most extraordinary of circumstances." *Brown v. Slenker*, 220 F.3d 411, 420 (5th Cir. 2000) (quotation marks and citation omitted).

There is scant Louisiana caselaw on the remedial justice principle under Article 3549(B), and only one case found the considerations to be compelling.  *See Smith v. ODECO (UK) Inc.*, 615 So. 2d 407, 410 (La. Ct. App. 1993).  In *Smith*, a resident of the United Kingdom brought an action in Louisiana state court for injuries sustained while on a drilling rig off the coast of Spain.  *Id.* at 408.  The defendants contended that Louisiana had no interest in the case and that Scotland was the proper jurisdiction in which to sue all defendants because the plaintiff was a resident of the United Kingdom, worked out of the Scotland office, and his injuries were treated in Spain and England.  *Id.*  The parties agreed that the substantive law of the United Kingdom applied, but the plaintiff submitted an affidavit explaining why jurisdiction would not lie in Scotland.  *Id.*  The court agreed, holding that Louisiana was the only forum with personal jurisdiction over all defendants.  *Id.* at 410.  Accordingly, there were "compelling considerations of remedial justice" warranting maintenance of the action in Louisiana.  *Id.*

No. 10-30393

We examine what is involved in the present suit. First, this action involves a situation where, through no fault of the plaintiffs, an alternative forum is not available. Although both the alleged injury-causing conduct and the injury occurred in Iraq, that country does not provide an available forum because of paragraph 3 of CPA Order 17 § 4. The Texas prescriptive period expired and, as Arkel insisted in the Texas proceeding, that state's courts potentially lacked personal jurisdiction over Arkel. The plaintiffs did not have an alternative forum to Louisiana.

Second, even were the plaintiffs' claims not barred in Iraq under CPA Order 17, it would be extremely inconvenient for either party to litigate in Iraq. Arkel is a limited liability company domiciled in Louisiana and the plaintiffs are residents of Texas. For all the progress in Iraqi security that the United States purchased with its blood and treasure, that country might reasonably be avoided as a desirable forum in which Americans can litigate.

The security concerns related to litigating in Iraq, and Arkel's exemption from suit there that CPA Order 17 seemingly provides, make the considerations of avoiding suit in Iraq compelling.

Arkel contends that the plaintiffs' procrastination should automatically constitute a non-compelling consideration. Arkel also believes it relevant that the suit was filed earlier in Texas, making the current suit little more than an attempt to forum shop. The Restatement of Conflicts, from which the concept of compelling considerations was borrowed, discusses procrastination in terms of a plaintiff allowing the prescriptive period to run in other jurisdictions and being forced to file in the final state to borrow a longer prescriptive period. *See* Restatement (Second) of Conflict of Laws, 1986 Revisions, § 142 cmt. (g) (noting

17

No. 10-30393

that most egregious examples of forum shopping occur where a forum entertains a claim not barred by its own statute of limitations, even though the forum had no other contact with the case).

Those are not our facts. The plaintiffs sought to borrow Iraq's prescriptive period because their claims had lapsed under Louisiana law. The Texas case was dismissed at least in part because of Arkel's compelling motion to dismiss for lack of personal jurisdiction in Texas. The plaintiffs brought their action in Louisiana because of the challenges of bringing it in Iraq. *See* La. Civ. Code art. 3549(B)(1).

Viewing the summary judgment evidence in the light most favorable to the nonmovants, we conclude the district court erred in granting judgment. The suit is barred under Louisiana prescription law, has not been shown to be barred under the prescription law of Iraq, whose substantive law applies to the merits of the action, and maintenance of the action in Louisiana is "warranted by compelling considerations of remedial justice." *Id.* On remand, the factual issue regarding when plaintiffs received necessary notice will need to be resolved.

IV. *Other Issues Raised by the Defendant*

Arkel presents other arguments it alleges require dismissal.

First, Arkel argues this action is barred because the plaintiffs are not proper parties under Iraqi law. It argues that Iraqi Civil Code Article 203 permits wrongful death and survival actions to be brought only by *dependants* of the victim, not surviving parents:

> In case of murder and in case of death resulting from wounds or any other injurious act renders the perpetrator liable to pay compensation to the dependants of the victim who have been deprived of sustenance on account of the murder or death.

18

Iraqi Civ. Code art. 203, *available at* http://gjpi.org/library/primary/statutes.

Arkel raised this issue in its summary judgment motion and also argues it on appeal. The plaintiffs have never addressed it, in the district court or here, and the district court made no ruling. Although the definition of "dependants" is unclear from Article 203, other Code provisions could provide standing. The plaintiffs asserted in their initial complaint that they had standing under Articles 5 and 89 of the Iraqi Civil Code. It appears that the plaintiffs were relying on Article 5 of the Iraqi Code of Civil Procedure and Article 89 of the Iraqi Personal Status Law. According to an English translation on the website provided by Arkel, Article 5 of the Iraqi Code of Civil Procedure states:

> Any of the heirs may act as a counterpart (litigant) in any suit filed for or against the [deceased]. However, the counterpart in relation to a particular property in the estate shall be the heir who has acquired such property.

At least one court has held that this provision gives parents standing in a wrongful death action in federal court seeking damages for the death of their son, who was killed in an automobile accident in Iraq. *Baragona v. Kuwait Gulf Link Transp. Co.*, 691 F. Supp. 2d 1346, 1347, 1349 (N.D. Ga. 2007), *vacated on jurisdictional grounds*, 691 F. Supp. 2d 1351 (N.D. Ga. 2009).

Further, the plaintiffs rely on a different provision that discusses inheritance by kinship and defines parents as heirs. Iraqi Personal Status Law art. 89; *see also Baragona*, 691 F. Supp. 2d at 1349.

We hold that a determination of whether the parents are proper parties is premature because the district court never addressed it. The possible sources for parental standing that we found under Iraqi law make the issue viable. "Although we have the authority to consider grounds presented to but not ruled

No. 10-30393

upon by the district court, we decline to do so because" of the benefit the district court will have of any further evidentiary presentation on this issue. *Bogy v. Ford Motor Co.*, 538 F.3d 352, 355 (5th Cir. 2008).

Arkel also argues that Iraqi law dictates that Louisiana law control all questions of procedure. Arkel refers to Article 28 of the Iraqi Civil Code for its authority, and then explains how that Article affects this case. *See* Iraqi Civ. Code art. 28. Because Arkel did not raise this issue in district court, we will not consider it. *See N. Alamo Water Supply Co. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996).

In summary, we have determined that Iraqi law was sufficiently proven. By operation of Louisiana Civil Code Article 3549, the Iraqi three-year prescription period applies. Based on what has been introduced, that period did not expire prior to suit. CPA Order 17 does not prevent this suit.

Whether parents are proper parties, and any other issue beyond what we have identified, are for further consideration on remand.

REVERSED and REMANDED for further proceedings.

No. 10-30393

EDITH H. JONES, Chief Judge, dissenting:

With due respect to my colleagues' conscientious parsing of the law, I dissent from the majority's interpretation of Iraqi law and the application of LA. CIV.CODE art. 3549(B)(1) to allow this otherwise time-barred case to proceed under Iraq's three-year statute of limitations. My concerns can be succinctly stated.

As an initial matter, the majority interprets Coalition Provisional Authority 17 ("CPA 17") very narrowly. The majority concludes that CPA 17 only applies to contract disputes and that the instant suit sounds in tort. Moreover, the majority dismisses CPA 17 § 18, the section that addresses torts, as "procedural" and "superfluous" to their analysis. In my view, this is an error: CPA 17 was, during its effective period, facially part of Iraqi law[1] and deserves to be interpreted appropriately.

Because CPA 17 is a part of Iraqi law, the law of the place of injury under LA. CIV. CODE art. 3543, a strong argument exists for applying only Louisiana law to this controversy. The majority opinion notes that Arkel is immune from Iraqi laws and Iraqi legal process by the terms of CPA 17 §§ 4.2 and 4.3. The immunity extends, respectively, to "matters relating to the terms and conditions of their Contracts" and "with respect to acts performed by them pursuant to the

---

[1] This conclusion has been accepted by other courts. *See, e.g., Harris v. Kellogg, Brown & Root Servs., Inc.*, ---- F. Supp. 2d ----, 2011 WL 2462486, at *7 (W.D. Pa. 2011) (Iraqi law expert, Professor Haider Ala Hamoudi, reported that CPA 17 was a "valid part of Iraqi law unless repealed" and CPA 17 was repealed on November 17, 2008.); *In re XE Servs. Alien Tort Litigation*, 665 F. Supp. 2d 569, 595 (E.D. Va. 2009) (finding that CPA 17 "was subsequently incorporated into Iraqi Law"); *Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1192 (S.D. Cal. 2007) (considering CPA 17 to be Iraqi law in a choice of law analysis).

No. 10-30393

terms and conditions of a Contract." The majority also cites CPA 17 § 18, which states that:

> Except where immunity has been waived in accordance with Section 5 of this Order, third-party claims including those . . . for personal injury, illness or death . . . arising from or attributed to acts or omissions of . . . Contractors or any person employed by them for activities relating to performance of their Contracts, whether normally resident in Iraq or not and that do not arise connection with military operations, shall be submitted and dealt with by the Sending State whose personnel . . . are alleged to have caused the claimed damage, in a manner consistent with the Sending State's laws, regulations and procedures.

Though the majority summarily dismisses this section with little analysis, I understand this section to mean that all "matters relating to the terms and conditions of [contractors'] Contracts" are exempt from Iraqi law and are to be dealt with by the Sending States (which, in this context, means countries other than Iraq). These provisions, I believe, exempt contractors like Arkel from Iraqi law. I emphasize that exemption from Iraqi law does not necessarily mean immunity from liability, because of the requirement that tort claims be resolved "consistent" with the Sending State's regulations." The scope of Arkel's immunity from liability, if any, remains to be determined.

Three objections may be raised to this conclusion. First, the majority endorses the district court's conclusion that whatever immunity is provided by CPA 17 is limited to matters dealing with terms and conditions of the contracts. The district court, however, overlooked CPA 17 § 18. Moreover, this tort case will necessarily "relate to" the terms and scope of Arkel's contract for "Operation and Maintenance for Power Generation Aboard Camp Taqqadim, Iraq."

22

No. 10-30393

Whether Arkel was responsible for the improper grounding of the generator depends, at the outset, on its contract.

Second, the majority asserts that CPA 17 "does not create an immunity from Iraqi laws relating to tort claims brought in federal court in the United States." But in my view, the whole point of § 18 is to substitute the Sending State's substantive laws for those of Iraq. Read in the majority's fashion, the courts and "processes" of Iraqi law are excluded from handling these cases *under Iraqi law*, but American courts are not. If this odd result was intentional, it would seem to embody a high form of cultural imperialism—distrusting the Iraqi people's legal institutions while favoring American judges' application of the Iraqi laws. This reading of § 18 is unnecessary. To say that the tort claims shall be handled "consistent with the Sending State's laws" need not include the Sending State's conflict of laws reference back to Iraq. Such an interpretation preserves the evident intent to apply the domestic law of Sending States to their contractors operating in Iraq. As has been noted, several courts have applied American substantive law to tort and contract claims governed by CPA 17. *Harris*, ---- F. Supp. 2d at ----, 2011 WL 2462486, at *21 (concluding that American state tort law, not Iraqi law, applied to a tort action resulting from a soldier being electrocuted while showering in Iraq by a faulty water pump maintained by an American company); *Dalkilic*, 516 F. Supp. 2d at 1192 (applying California contract law to a contract for work performed in Iraq).

Third, the majority claims that CPA 17 § 18 is merely procedural and superfluous to their analysis and does not substitute Louisiana substantive law for Iraqi law. Such a reading of § 18 would make the last clause of the section surplusage. The section states that certain tort claims "shall be submitted and

23

dealt with by the Sending State." This provision takes jurisdiction over certain tort claims out of the hands of Iraqi courts and places it with the sending state. The last clause of the section states that the claims shall be dealt with "in a manner consistent with the Sending State's laws, regulations and procedures." If the majority is correct and this last clause has no bearing on what law the Sending State's court should apply, then this last clause would never be used by any court. The Iraqi courts would not reach this question because the case is automatically submitted to the sending state. The Sending State's court would not reach it because it is merely procedural and trumped by the Sending State's choice of law analysis. The better reading that gives meaning to all the words in the section is that Iraqi law is fully displaced by the "laws, regulations and procedure" of the sending state. This substitution would mean that a Louisiana choice of law analysis could not reach back to the pre-substitution Iraqi law to take advantage of a longer statute of limitations.

Even if the majority is correct that Iraqi substantive law applies to this case (notwithstanding CPA 17), I cordially disagree with their interpretation that under LA. CIV CODE art. 3549(B)(1), there were "compelling considerations of remedial justice" requiring the displacement of Louisiana's prescription period by Iraq's more liberal statute. That Iraqi courts were "unavailable" for this litigation is not the end of the discussion. While I cannot fault most of the majority's discussion of the authorities, I note that in *Brown v. Slenker*, 220 F.3d 411, 420-21 (5th Cir. 2000), this court described *Smith v. Odeco*, on which the majority rely, as reflecting the fact that Louisiana was the only forum in which plaintiff's suit could be maintained. The *Brown* plaintiff, on the other hand, chose *to litigate in Louisiana rather than in the defendant's residence in Virginia. Id.* This court stated, "In cases where plaintiffs have litigated their claims in Louisiana by choice, not by necessity, claims of 'compelling circumstances'

24

No. 10-30393

warranting maintenance of the suit in Louisiana have been consistently rejected." *Id.* So holding, this court refused to apply art. 3549 to avail the plaintiff.

In this case, Sergeant Everett's parents chose, as a matter of convenience, to sue initially in Texas rather than Louisiana. They thus exposed themselves to what the majority describes as Arkel's "compelling motion to dismiss for lack of personal jurisdiction in Texas." Yet they knew within three or four months of the accident that their son had been electrocuted and they were informed of the potential involvement of Arkel, a Baton Rouge-headquartered company. They could have filed a timely suit in Louisiana under Louisiana law against Arkel. I would conclude that this chronology did not give rise to compelling circumstances of remedial justice.

I respectfully dissent.

25