# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60424

ULISES HERNANDEZ ROSALES,

> Petitioner,

v.

LORETTA LYNCH, U. S. ATTORNEY GENERAL,

> Respondent.

United States Court of Appeals
Fifth Circuit

**FILED**

May 3, 2016

Lyle W. Cayce
Clerk

Petition for Review of an Order of the
Board of Immigration Appeals

Before KING, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Ulises Hernandez Rosales (Hernandez) petitions for review of a Board of Immigration Appeals decision rejecting the claim that he is a United States citizen and upholding an order of removal entered against him. Because there is a genuine issue of material fact, we transfer the case to a United States district court for a hearing and decision on Hernandez's nationality claim with regard to that factual issue.

**I**

Hernandez is a native and citizen of Mexico; he was born in Nuevo Leon, Mexico on August 21, 1986. He was admitted to the United States in 1995 as

a nonimmigrant visitor.  He overstayed his visa, and, in 2009, was convicted in a Texas court of possession of cocaine.

In 2010, the Department of Homeland Security served Hernandez with a Notice to Appear charging that he was removable because he had remained in the United States longer than permitted and had been convicted of a violation relating to a controlled substance.[1]  Hernandez appeared before an immigration judge in 2011 and admitted that he was born in Mexico, had overstayed his visa, and was convicted of cocaine possession.  His case was continued to allow him the opportunity to demonstrate, as a defense to removal, that he derived United States citizenship at birth from his mother, Edna Rosales Villanueva (Edna).

In subsequent proceedings, Hernandez argued that he had acquired citizenship by operation of 8 U.S.C. § 1409(c), which applies to children born out of wedlock to U.S.-citizen mothers who were continuously physically present in the United States for at least one year before the child's birth.  The parties ultimately agreed that his mother, Edna, was a United States citizen. Because the evidence reflected Edna had continuously resided in the United States for more than one year before Hernandez's birth, the citizenship determination turned on whether he was born "out of wedlock" for purposes of the Immigration and Nationality Act (INA).  The Government relied on evidence that Hernandez's mother married Marcelino Hernandez Garcia (Marcelino) about one year before Hernandez was born and evidence indicating that Marcelino was Hernandez's father.  Hernandez relied principally on an argument that he was born out of wedlock as a matter of Mexican law because his birth certificate does not indicate the identity of his father.

---

[1] *See* 8 U.S.C. § 1227(a)(1)(B), (a)(2)(B)(i).

No. 14-60424

The immigration judge found that Hernandez was born in wedlock and could not benefit from the provisions of 8 U.S.C. § 1409(c). The judge also found Hernandez could not benefit from 8 U.S.C. § 1401(g), which governs in-wedlock births, because Hernandez's mother had not been physically present in the United States for ten years before Hernandez was born. The immigration judge concluded that Hernandez had not established his United States citizenship and ordered him removed to Mexico. The Board of Immigration Appeals (BIA) affirmed, and Hernandez seeks review.

## II

The INA provides for judicial review of removal orders when the nationality of the petitioner is in issue.[2] Petitions for review are filed with the appropriate court of appeals, which "shall decide the nationality claim" if "no genuine issue of material fact about the petitioner's nationality is presented."[3] Otherwise, "the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing" on that claim.[4]

Whether transfer is appropriate depends on whether the petition presents a "genuine issue of material fact." Because "[t]his statutory language is virtually identical to that embodied in" Federal Rule of Civil Procedure 56, we transfer petitions to the appropriate district court when "the evidence presented in support of the claim would be sufficient to entitle a litigant to trial were such evidence presented in opposition to a motion for summary judgment."[5]

---

[2] 8 U.S.C. § 1252(a)(1), (b)(5).

[3] *Id*. § 1252(b)(5)(A).

[4] *Id*. § 1252(b)(5)(B).

[5] *Agosto v. INS,* 436 U.S. 748, 754, 756 (1978) (addressing identical language in former 8 U.S.C. § 1105a(a)(5)); *see also Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 399 & n.50 (5th Cir. 2006).

No. 14-60424

We conduct our review de novo, as a petitioner's nationality is a "purely legal question that Congress has not consigned to the discretion of the BIA."[6] Although the Government must "establish[] by clear and convincing evidence that . . . [an] alien is deportable,"[7] it is the petitioner who "bears 'the burden of proving that he qualifies for naturalization.'"[8]

## III

The parties agree that Hernandez is a United States national if and only if he acquired citizenship at birth from his mother. At issue is whether he benefits from 8 U.S.C. § 1409(c), the provision of the INA governing the transmission of citizenship to "person[s] born . . . out of wedlock":

> [A] person born, on or after [December 24, 1952,] outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year.[9]

If Hernandez was *not* born "out of wedlock," the less generous provisions of 8 U.S.C. § 1401(g) apply. In that case, his claim to United States nationality fails because his mother did not have the requisite ten years of physical presence in the United States prior to his birth.[10] Unlike other provisions of

---

[6] *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004).

[7] 8 U.S.C. § 1229a(c)(3)(A).

[8] *Ayton v. Holder*, 686 F.3d 331, 335 (5th Cir. 2012) (per curiam) (quoting *Marquez–Marquez v. Gonzales,* 455 F.3d 548, 554 (5th Cir. 2006)).

[9] 8 U.S.C. § 1409(c) (1982); *see Iracheta v. Holder*, 730 F.3d 419, 423 (5th Cir. 2013) ("The applicable law for transmitting citizenship to a child born abroad when one parent is a citizen is the statute in effect at the time of the child's birth." (citing *Marquez-Marquez*, 455 F.3d at 559 n.23)).

[10] 8 U.S.C. § 1401(g) (1982) (granting citizenship to a child of one U.S.-citizen parent and one non-U.S. citizen parent provided that the U.S.-citizen parent was physically present in the United States for at least ten years—including at least five years after attaining the age of fourteen—before the child was born).

the INA, it is Hernandez's status at birth that determines the outcome; whether he was later legitimated is irrelevant.[11]

The INA does not define "out of wedlock." The Government, citing unpublished decisions from other circuit courts, urges us to adopt the BIA's conclusion that "[a] person is 'born out of wedlock' within the plain meaning of [8 U.S.C. § 1409(c)] only if the person's natural parents were not legally married to each other at the time of the person's birth." Hernandez argues that where the INA does not supply a definition, "[p]recedent requires the court to look to the controlling foreign law in the place of the child's birth to determine the child's status." We need not decide whether foreign law prevails over the ordinary meaning of "out of wedlock" because, for reasons explained below, Hernandez's claim that the law of Nuevo Leon differs in any relevant way from the ordinary meaning of "out of wedlock" fails. To the extent the substance of foreign law is at issue, the petitioner has the "burden of proving" it,[12] and determinations of foreign law are questions of law "subject to de novo review."[13]

## A

Hernandez argues that this court must decide his nationality claim in his favor because, as a matter of Mexican law, he was born out of wedlock regardless of whether his parents were married. He contends that under applicable Mexican law, "the presumption that a child is born 'of a marriage'

---

[11] *Cf. Iracheta*, 730 F.3d at 423, 425 (discussing whether the petitioner, who was born out of wedlock, was legitimated under Mexican law because 8 U.S.C. § 1409(a) required such an inquiry).

[12] *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 546 (5th Cir. 2012) (citing *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1006 (5th Cir. 1990)) (describing rules governing proof of foreign law in wrongful death suit); *cf.* FED R. CIV. P. 44.1 cmt. ("[T]he court is free to insist on a complete presentation [of foreign law issues] by counsel.").

[13] *Iracheta*, 730 F.3d at 423 (quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999)); *see also* FED R. CIV. P. 44.1.

is defeated if the father's name does not appear on the birth certificate." Even if his mother had been married to his father at the time of his birth, he argues that he is considered "illegitimate" or born "out of wedlock" because of provisions of the Civil Code of Nuevo Leon, the Mexican state in which he was born.

Hernandez's conclusory characterizations of Mexican law are not supported by the authorities he cites. As he acknowledges, "Article 324 of the Civil Code of Nuevo Leon creates a rebuttable presumption that a child is the child of a marriage if the child was born at least 180 days after the marriage." He suggests that two articles of the same civil code—Articles 340 and 341— permit him to rebut this presumption and are applicable to his case.

Although his argument is at times difficult to discern, it is clear that neither Article 340 nor Article 341 can be construed as he contends. According to the translation in the record, Article 340 provides that "[t]he relationship of children born to a marriage is proved with the birth certificate and with the marriage certificate of the parents." By its terms, this article specifically contemplates the joint use of the marriage certificate and birth certificate to prove the relationship between the child and his married parents. In other words, it foresees the possibility that the birth certificate alone will not establish the child's relationship to both his mother and father. The absence of his father's name from his birth certificate does not undermine the presumption that he is "born to [his parents'] marriage" under Mexican law.

Article 341 provides that "[i]f the certificate does not exist, or if [it is] defective, incomplete or false, [the relationship of children born to a marriage] is proved through constant physical possession of the child . . . ." But Hernandez's birth certificate "exist[s]" and is not "defective, incomplete or false." All information called for on the form is provided. It is not "incomplete" simply because it fails to include a place on the form for the father's name.

No. 14-60424

Even accepting for the sake of argument that the law of Nuevo Leon governs the determination of whether Hernandez was born "out of wedlock," his birth certificate does not reflect that status.

## B

The Government contends that unopposed evidence in the record indicates that Edna and Marcelino are Hernandez's biological parents and were married approximately one year before Hernandez was born. As a result, it concludes, Hernandez was not born out of wedlock and cannot benefit from the application of 8 U.S.C. § 1409(c).

The Government submitted a marriage certificate, accompanied by certification of authenticity, showing that Edna and Marcelino were married on July 2, 1985 in Nuevo Leon, 13 months before Hernandez was born. Hernandez did not object to this evidence, and the immigration judge found it reliable. In addition, Hernandez's birth certificate indicates that his mother's name was "Edna Rosales Villanueva *de Hernandez*," with "de Hernandez" suggesting she was married to someone—like Marcelino—whose surname was Hernandez. Finally, a birth certificate issued in 1991 contains a marginal notation indicating that Edna married Marcelino in 1985, although Hernandez sought to call the authenticity of that document into question.

Hernandez submitted sworn statements from two of Edna's acquaintances who "have known Edna . . . since about 1979 here in . . . Texas," and that, "[t]o [their] knowledge, [they] have never known [Edna] to have been married until about 2001." This establishes only that they possessed no information that would resolve the factual question at issue. Nor is Hernandez's own professed lack of certainty about whether Edna and Marcelino were married sufficient to create a genuine issue of disputed fact. Edna's and Marcelino's subsequent marriages to other persons—Edna in 2002,

Marcelino in 2005—do nothing to suggest that they were not married to one another when Hernandez was born in 1986.

However, Edna provided a sworn affidavit stating that she was "single" when Hernandez was born. The substantive portion of the affidavit reads as follows: "I, Edna Rodriguez, do hereby confirm that I was single at the time my son, Ulises, was born which was on August 21, 1986. His father was not present at all when I gave birth nor for many years after that." Although this affidavit does not suggest that Edna was never married, it could—if credited—support an inference that she and Marcelino had divorced by the time Hernandez was born. Because we are obliged not to weigh conflicting evidence,[14] we do not assess the credibility of this affidavit or attempt to reconcile it with, for example, the listing of Edna's name as "Edna Rosales Villanueva *de Hernandez*" on Hernandez's birth certificate or Hernandez's testimony that Edna and Marcelino "always lived together from what [he] remember[ed] as a kid."

Evidence that is "merely colorable or is not significantly probative" would be no barrier to finding that Hernandez's claim to United States citizenship fails as a matter of law.[15] Though thin evidence, however, Edna's statement raises a genuine issue of material fact as to whether Edna and Marcelino had divorced before Hernandez was born.

Hernandez contends that he is not the biological child of Marcelino, but he has submitted no evidence to support such a conclusion. He asserts that "[t]he record contains no evidence that the man [his] mother allegedly was married to at the time of his birth has any biological relationship to [him]." As discussed above, Hernandez's name as reflected on his birth certificate is:

---

[14] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[15] *See id.* (citation omitted) (describing standard for summary judgment).

No. 14-60424

Ulises Eduardo *Hernandez* Rosales. "Hernandez" is Marcelino's surname, and it appears in the location traditionally reserved for the father's surname. In addition, Hernandez testified repeatedly that he believed Marcelino was his biological father and suggested that Marcelino helped raise him for "10, 15 years."

Rather than marshalling evidence that Marcelino is not his biological father, Hernandez accuses the Government of relying on a "manufactured presumption" of paternity that has no foundation in Mexican law. Here, however, the Government's position is based on probative evidence of paternity.

## IV

The parties agree that if Edna and Marcelino were not married at the time of Hernandez's birth, he was "born . . . out of wedlock." In that case, he is a United States citizen by virtue of 8 U.S.C. § 1409(c). If, on the other hand, the court concludes Edna and Marcelino remained married at the time of his birth, he was not born out of wedlock and could only claim United States citizenship if Edna met the ten-year physical presence requirement of 8 U.S.C. § 1401(g). Since he concedes Edna did not meet that requirement, his claim to citizenship in that case would fail.

\* \* \*

The relevant statute directs that we transfer this case "to the district court of the United States for the judicial district in which the petitioner resides."[16] According to the petition for review, Hernandez is detained at a facility in Livingston, Texas, which is located in the Eastern District of Texas. We therefore TRANSFER this petition for review to that district for a hearing on Hernandez's nationality claim, to determine, specifically, whether

---

[16] 8 U.S.C. § 1252(b)(5)(B).

9

No. 14-60424

Hernandez's mother and Marcelino were married at the time Hernandez was born, and for entry of a final judgment.[17]

---

[17] *Id.* (requiring that district court decide nationality claim "as if an action had been brought in the district court under [28 U.S.C. § 2201]"); *see, e.g.*, *Lopez v. Gonzales*, Civ. No. 7:03-CV-320 (S.D. Tex. Oct. 11, 2006) (ordering entry of final judgment after conducting new hearing on petitioner's nationality claim), *vacated on other grounds sub nom. Lopez v. Holder*, 563 F.3d 107 (5th Cir. 2009).